**ABC HOME HEALTH SERVICES, INC., Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

Civ. A. No. CV293–143.

United States District Court, S.D. Georgia, Brunswick Division.

Oct. 6, 1994.

James A. Bishop, Bishop & Lindberg, Brunswick, GA, H. Wayne Phears, Darrin R. Schutt, Phears & Moldovan, Norcross, GA, for plaintiff.

Phillip A. Bradley, James J. Thomas, II, David L. Balser, Carole A. Loftin, Bruce P. Brown, Long, Aldridge & Norman, Atlanta, GA, for defendant.

## ORDER

ALAIMO, District Judge.

This case is a diversity contract dispute between Plaintiff, ABC Home Health Services, Inc. ("ABC"), and Defendant, International Business Machines Corporation ("IBM"). Before the Court is ABC's motion to dismiss IBM's counterclaims as a sanction for destruction of documents. For the reasons discussed below, ABC's motion is DENIED.

## FACTS

ABC Home Health Services, Inc., is a home health care provider with headquarters in Brunswick, Georgia. IBM undertook a project developing "Medical Operations Management System" ("MOMS") software for ABC. While developing the software, IBM utilized an AS/400 computer belonging to ABC but located in IBM's facility in Atlanta, Georgia.

In April of 1993, ABC terminated IBM's involvement in the "MOMS" project and requested the return of its AS/400 computer. Before returning the computer, IBM deleted the personal files of the IBM/ABC team members. The files contained both project-related documents and purely personal documents. In explaining the deletion of the personal files, IBM states that since ABC gave it a "clean" AS/400, IBM wished to return a "clean" AS/400. ABC claims that IBM intentionally destroyed the files on the AS/400 in anticipation of litigation and after consultation with IBM's in-house counsel. As a remedy, ABC requests the Court to strike IBM's counterclaims.

The parties agree that the destruction of the personal files on the AS/400 took place before ABC filed this action. ABC claims, however, that IBM attorneys participated in the decision to destroy documents in anticipation of this litigation. In support of this allegation, ABC notes that IBM consulted its in-house counsel at least a month before the documents were destroyed. In March of 1993, Steven Devinney of ABC sent IBM a letter requesting certain information about the "MOMS" project. Because of the tone of Devinney's letter, IBM consulted its attorneys as to how to respond to such correspondence. The attorneys advised IBM to collect the information as requested. ABC claims that this consultation with IBM attorneys is connected to IBM'S destruction of the personal files on the AS/400 in April of 1993.

IBM refutes this inference and argues that conversations with attorneys in March of 1993 had nothing to do with the personal files on the AS/400. Two IBM in-house counsel attorneys have filed affidavits stating that in March of 1993, "I did not discuss ... the possibility of erasing any documents from any computer, including ABC's AS/400." (Steven W. Budd Aff. at ¶ 2; Martin D. Avallone Aff. at ¶ 2.)

IBM does not deny erasing the information from the computer. It points out, however, that while some personal files were deleted, the most important item, the "MOMS" software, was not deleted. IBM also claims that ABC knew the personal files had been erased when IBM returned the AS/400 in April of 1993, but ABC did not complain at that time. IBM suggests that ABC's decision to file this motion now is to gain a tactical advantage. IBM claims that if the erasure was somehow improper, ABC would have complained several months ago.

IBM also claims to have maintained hard copies of all project related documents, including all "status reports." These documents exceed 100,000 in number and have been produced to ABC. IBM claims that both IBM and ABC employees had the opportunity to print out and save hard copies of any document on the AS/400.

In contrast, ABC claims that several "status reports" written by "Synon consultants" have been irretrievably lost. One of the Synon consultants testified as follows:

Q: Did you lose any important information in that process?

A: Well, the status reports. I may have had certain copies that I kept as hard copy but, again, the idea is, you know, I could always retrieve it, so in most of the status—I believe most or all the status reports were sent to Synon ...

Q: So hard copies, at least at one point, existed of just about everything that you had in your personal folder?

A: I believe so.

(Gary Wayne Stewart Dep. at 132.)

Based on the above testimony, ABC maintains that several status reports are missing due to IBM's destruction of the personal files on the AS/400. ABC also claims that these missing status reports are critical of IBM management. Finally, ABC argues that the destruction of personal files on the AS/400 is part of a pattern of destruction because several IBM employees have 'thrown away' their personal project notes and diaries.

## DISCUSSION

### I. Sanctions Pursuant to Court's Inherent Powers

■ Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose sanctions for discovery abuses. Fed.R.Civ.P. 37. In this case, Rule 37 does not directly apply because the alleged destruction of documents took place before the action was filed and before discovery began. Nevertheless, conduct ordinarily sanctionable under Rule 37, but which falls outside the express terms of

the rule, "can be sanctioned by proper exercise of this Court's inherent powers." *E.E.O.C. v. Jacksonville Shipyards,* Inc., 690 F.Supp. 995, 997 (S.D.Fla.1988); *see also, Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1446–47 (11th Cir.1985) (discussing court's inherent powers). In addition, destruction of documents is sanctionable even if it takes place prior to the filing of an action:

Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, *or potential litigation,* or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information.

*William T. Thompson Co. v. General Nutrition Corp.,* 593 F.Supp. 1443, 1455 (C.D.Ca. 1984) (emphasis added).

■ In the Eleventh Circuit, however, "the decision to dismiss a claim, like the decision to enter a default judgment, ought to be a last resort—ordered only if noncompliance with discovery orders is due to willful and bad faith disregard of those orders." *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1556 (11th Cir.1986); *see also, Telectron, Inc. v. Overhead Door Corp.,* 116 F.R.D. 107, 134–37 (S.D.Fla.1987) ("The default sanction under Rule 37 is a last resort, to be ordered only if noncompliance is due to willful or bad faith disregard of court orders which cannot reasonably be expected to be remedied by lesser but equally effective sanctions."). While the present case does not explicitly involve a discovery order, the analysis is nevertheless similar. Dismissal of IBM's counterclaims is a last resort.

Striking IBM's counterclaims in this action is similar to entering a default judgment against them.[1] In support of its request for such a harsh sanction, ABC cites two cases in which a court did indeed enter a default judgment as a sanction. *William T. Thompson Co.,* 593 F.Supp. 1443; *Telectron, Inc. v. Overhead Door Corp.,* 116 F.R.D. 107 (S.D.Fla.1987). The situation raised here, however, cannot be compared to these cases. *See, William T. Thompson Co.,* 593 F.Supp. at 1446–49 (court entered default judgment

---

**1.** In its counterclaims, IBM seeks nearly seven million dollars in unpaid invoices.

against defendants who destroyed documents specifically sought in plaintiff's discovery requests and continued to destroy documents in defiance of court order to preserve documents); *Telectron,* 116 F.R.D. at 109–10 (defendant willfully and intentionally ordered destruction of highly relevant documents the day defendant received plaintiff's complaint and request for production). IBM's conduct simply does not constitute deliberate undermining of a discovery request.

Accordingly, the Court **DENIES** ABC's motion to dismiss IBM's counterclaims. As a lesser sanction, however, ABC may be entitled to a jury instruction explaining that destroyed documents are presumed to be damaging to the party responsible for the destruction. *Telectron, Inc.,* 116 F.R.D. at 133 ("[B]ad faith destruction of a relevant document . . . gives rise to a strong inference that production of that document would have been unfavorable to the party responsible for its destruction."); *see also, Vick v. Texas Employment Comm.,* 514 F.2d 734, 737 (5th Cir.1975) ("The adverse inference to be drawn from destruction of records is predicated on bad conduct of the defendant.").

## II. *Clean Hands Doctrine*

 ABC argues that IBM's equitable counterclaims should be dismissed because IBM comes to court with "unclean hands" as a result of its destruction of documents. *See* O.C.G.A. § 23–1–10 (1982) ("He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action."). To assert this doctrine successfully, however, ABC must demonstrate that IBM's wrongdoing is directly related to the claim against which unclean hands is asserted. *Adams v. Crowell,* 157 Ga.App. 576, 577, 278 S.E.2d 151 (1981). Under Georgia law, "the unclean hands doctrine does not attach

to all prior bad acts . . . There must be a direct relationship between the [equitable relief sought] and the acts giving rise to the unclean hands." *West v. West,* 825 F.Supp. 1033, 1049 (N.D.Ga.1992) (citations omitted).

 Here, IBM's erasure of the personal files from the AS/400 has but a tenuous connection to the equitable relief it seeks. IBM's equitable counterclaims pray for a constructive trust and appointment of a receiver over funds ABC has received from Medicare. IBM seeks this relief because ABC refuses to pay IBM approximately seven million dollars for services rendered and hardware delivered. IBM contends that Medicare has reimbursed ABC for IBM invoices that were never paid. Thus, IBM claims that ABC's Medicare reimbursements actually belong to IBM and should be placed in a constructive trust.

Any relationship between the destruction of the personal files on the AS/400 and IBM's equitable claims concerning Medicare reimbursements is merely tangential and will not support dismissal of IBM's equitable counterclaims on the basis of unclean hands.

## CONCLUSION

For the above reasons, the Court DENIES ABC's motion to dismiss IBM's counterclaims as a sanction for destruction of documents. An appropriate jury instruction regarding destruction of documents may be warranted at a later date.

**SO ORDERED.**