**Anita McGUIRE, Plaintiff,**

v.

**ACUFEX MICROSURGICAL, INC., Defendant.**

**No. CIV.A. 95–12563–NG.**

United States District Court, D.Massachusetts.

Aug. 5, 1997.

Stephen J. Kuzma, Law Offices of Stephen J. Kuzma, Boston, MA, for Plaintiff.

John F. Adkins, Francis H. Fox, Bingham, Dana & Gould, Boston, MA, Michael P. Murphy, Regnante, Sterio & Osborne, Wakefield, MA, for Defendant.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

## I. INTRODUCTION

Anita McGuire ("McGuire"), the plaintiff in this action, has moved for sanctions under Fed.R.Civ.P. 37, against the defendant Acufex Microsurgical, Inc. ("Acufex"), based on the deletion by Acufex's Human Resources Director, Charlene Palmer ("Palmer") of a paragraph from an evaluation memorandum concerning McGuire authored by Paul Anderson ("Anderson"), one of the plaintiff's supervisors.[1] Anderson drafted the memorandum based on his conversation with the plaintiff about her charges of sexual harassment against her former supervisor, William Hanna ("Hanna").

Palmer deleted the paragraph from the Anderson memorandum when she reviewed Anderson's draft in the course of her duties as the Human Resources Director, in November of 1993. At the time of the deletion, McGuire had filed charges of sexual harassment under M.G.L. c. 151B before the Massachusetts Commission Against Discrimination ("MCAD"), as she was obliged to do under Title VII prior to filing this federal lawsuit.[2] 42 U.S.C. § 2000e–5(c); *Lawton v. State Mutual Life Assurance Co. of America,* 924 F.Supp. 331, 339 (D.Mass.1996).

The missing paragraph was "found" by Anderson on his personal computer's hard drive, just before his deposition in January of 1997. It was produced at the deposition and seen then for the first time by both parties' counsel.

---

**1.** Hereinafter I will refer to the edited document as the "Anderson memorandum," and the unedited version as the "Anderson draft."

**2.** In her sexual discrimination charge before the MCAD, McGuire alleges that Hanna tried to kiss her, asked her out on dates, and when she refused, created a hostile working environment for her. She claims Hanna's conduct was in violation of 42 U.S.C. §§ 2000e *et seq.*

Plaintiff alleges the spoliation of evidence, a serious allegation. An evidentiary hearing was held in this Court on March 27, 1997, to determine whether there was any misconduct by the defendant in altering the Anderson memorandum and if so, what remedy was appropriate.[3]

As a result of the testimony before this Court at the March hearing, and based on relevant federal and Massachusetts law, I am satisfied that there was no sanctionable misconduct on the part of the defendant which has prejudiced McGuire. Therefore, the plaintiff's motion is **DENIED**. The stay on discovery is lifted, as set forth in this order, and discovery, including a psychological examination of McGuire, will be concluded by September 1, 1997, when discovery shall close.

## II. BACKGROUND

The relevant facts for the purposes of deciding this motion, are as follows: McGuire worked at Acufex in Mansfield, Massachusetts, for a very short time, from March 19, 1993, until November 12, 1993. When Hanna was promoted in August to the head of the manufacturing "cell" in which McGuire worked, she expressed concerns to Palmer and others about having him as her immediate supervisor, since she had previously rebuffed his attempts to date her. Palmer told plaintiff that Hanna had been specifically instructed to act appropriately towards all the employees under his supervision, and that this issue had been discussed with Hanna by his direct supervisor, Frank DiFrancesco ("DiFrancesco").

In late September of 1993, McGuire complained of specific instances of misconduct by Hanna, telling DiFrancesco and Palmer that Hanna was singling her out for criticism and assigning her difficult and unpleasant work tasks. DiFrancesco spoke with Hanna, told him not to have any further contact with McGuire, and then DiFrancesco reassigned her, with her express approval, to a different work group, where her new supervisor was Anderson.

On November 1, 1993, McGuire filed her charge with MCAD; she informed Anderson of this during a meeting on November 2. The MCAD charge focused on Hanna; it alleges that Hanna made lewd and sexual comments to her, requested oral sex from her, and that he was willing to give her less rigorous job assignments if she would have sex with him. The following week, pursuant to her duties, Palmer conducted an investigation of the charges (she was out of the country on business during the week of November 1). After speaking with at least ten Acufex employees, Palmer concluded there was a lack of evidence to substantiate McGuire's charges against Hanna. Nevertheless, Palmer and Acufex's president, James Stitt, met with Hanna and formally warned him that harassment would not be tolerated at Acufex; a written warning was issued to Hanna dated November 19, 1993. McGuire quit Acufex on November 12, 1993.

On November 2, after the meeting with McGuire at which she informed him of the MCAD charges, and described them, Anderson drafted the memorandum at issue here. On November 3, 1993, he brought his draft on a computer disk to Pam Curtis ("Curtis"), Palmer's assistant at Human Resources, where, in his presence, she inserted the words "sexual favor" in place of a more graphic description of the events. Curtis also informed Anderson that the last paragraph, which read as follows, was inappropriate, although she did not tell him that it would be deleted:

A statement that she just wanted to be one of the guys. I commented that an attractive woman cannot be one of the guys and this is misconduct on her part that has promoted misconduct among all parties involved. Most of the men she has socialized with have worked in an all male manufacturing environment and probably are not aware of how to conduct themselves when a woman enters this environment. I also

---

**3.** The court ordered discovery on the circumstances surrounding the generation of this memorandum and its editing. The defendant paid the costs of the various depositions. Defendant also spent significant sums in order to recreate from computer files and backup tapes the original unedited version of the Anderson memorandum to determine its history, when it was edited, and on whose computer terminal.

told her that #(3)27 this is something (sic) she should be aware of and should adjust her conduct to also. She understood the point I was making and agreed.

Curtis returned the disk to Anderson with the "sexual favor" edit, and handed the disk to the Human Resources secretary, Bonnie Wade, to load a copy onto their computer so that Wade could make some grammatical changes. Anderson then took this disk with him when he left the Human Resources office.

When Palmer returned to the office on November 8, 1993, she reviewed this memorandum, agreed with Curtis that the last paragraph was inappropriate for a personnel record to be kept in McGuire's file, and therefore deleted it. She then placed the edited memorandum into McGuire's personnel file. The Anderson memorandum was headed: "Interoffice Correspondence." It is addressed to "File" from Paul Anderson, and dated November 3, 1993. The paper copy of Anderson's draft was discarded by Palmer consistent with company practice, and was not saved in any investigative file. On November 11 and 12, Acufex faxed the edited copy of the Anderson memo, and other supervisors' memoranda, to its parent corporation, American Cyanamid.

Palmer left Acufex in 1995; Curtis took over her job as Director of Human Resources. It was Curtis who gathered and provided the documents to counsel pursuant to discovery in the present lawsuit, which was filed November 28, 1995. While the Anderson memorandum appears to have been on Bonnie Wade's office computer in its unedited form as of December 31, 1993, and on Anderson's office computer as of December 31, 1994, there is no evidence that defendant or its employees (other than Anderson on his home computer) had an unedited copy of the Anderson memorandum, either on paper or on disk, after November 28, 1995, when this federal lawsuit began.

Anderson met with Acufex's counsel, Michael Murphy ("Murphy"), on January 4, 1997, to prepare for his January 9, 1997

deposition. When Anderson saw the edited copy of the memorandum, he commented that it looked shorter than he originally remembered. He reviewed the draft document on his home computer on January 5, 1997, printed out a copy, and brought it with him to his deposition on January 9, 1997, where it was first shown to Murphy, minutes before the deposition began.

The document was produced for plaintiff's counsel following a break in the deposition. Anderson was questioned extensively about this memorandum by plaintiff's counsel. Defense counsel, following the deposition, began taking steps to locate and preserve evidence on Acufex's computers. Acufex immediately complied, making certain that plaintiff could conduct a complete inquiry into the circumstances surrounding the deletion of the last paragraph from Anderson's memorandum. It offered to make available for depositions, at its own expense, Palmer, Curtis, and Bonnie Wade, and provided a limited waiver of attorney-client privilege so that they could be questioned concerning the preparation, editing, or other alteration of documents, and the transmission of records to defense counsel.[4]

Acufex spent some 15 to 20 person-hours searching through the backup tapes of its computer files from 1993 on, looking for any documents mentioning or relating to McGuire.

Plaintiff moved for sanctions pursuant to Fed.R.Civ.P. 37. An evidentiary hearing on this motion was held in this Court on March 27, 1997. Palmer, Curtis, Anderson and Murphy all testified as to their knowledge of the creation, editing, and production of the Anderson memorandum.

## III. DISCUSSION

### A. Authority To Remedy Discovery Violations

The first question to be addressed is the source of this Court's authority to consider the matter of sanctions. That question hinges on another—the legal significance of the

4. I agreed with the parties that the first step was discovery on the circumstances surrounding the deletion. All told, some eleven depositions have

been taken on this matter, in addition to the evidentiary hearing before me.

fact that, to the extent that there was any spoliation of evidence, it occurred pre-litigation, in the absence of any court order or discovery request, but while MCAD proceedings were pending.

### 1. *Federal Rules*

Under Fed.R.Civ.P. 37(b), sanctions may be levied by courts when a "party fails to obey an order to provide or permit discovery ... or if a party fails to obey an order under Rule 26(f)." Here, neither Acufex nor its counsel has failed to obey any explicit order of this Court.

▮ Fed.R.Civ.P. 37(b) provides for sanctions for the complete failure to comply with discovery obligations: "If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just...." Rule 37(b) necessarily applies only *after* litigation has formally commenced and some form of court order has not been obeyed. *See Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363, 367–68 (9th Cir.1992) ("Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence; Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse.")

The instant situation is complicated by the fact that although litigation had not formally commenced in the federal court at the time that the paragraph in question was deleted, the parties were not in the usual pre-litigation limbo. Charges were pending before the MCAD. Filing charges before the MCAD is a statutory administrative prerequisite to federal discrimination litigation. 42 U.S.C. § 2000e–5(c). Moreover, Fed.R.Civ.P. 26(a)(1)(B) obligates the parties to turn over either relevant documents or descriptions of them automatically, in advance of any formal discovery requests.

▮ It is clear to me that the parties, obliged to proceed before the MCAD, incur obligations under the Federal Rules, to preserve evidence relevant to the plaintiff's claims and to be ready to turn such evidence over should formal litigation commence. Ja-mie S. Gorelick *et al.*, *Destruction of Evidence*, §§ 3.8–3.12 (1989) (hereinafter "Gorelick") (one prerequisite of the imposition of sanctions for destruction of evidence is the occurrence of the act either after suit has been filed, or, if before, when filing of the suit is fairly perceived as imminent).

I need not resolve the question of whether Rule 37(b)(2) covers the conduct at issue, since there is no doubt that I have the authority to consider the allegations of misconduct under the inherent powers doctrine.

### B. *Sanctions Under The Court's Inherent Powers*

#### 1. *The Significance Of The MCAD Proceeding*

▮ Plaintiff contends that under the Court's inherent powers, which are indeed broad, *see Unigard*, 982 F.2d at 368 & n. 2, I have the power to determine first if there was misconduct, and second, if appropriate, to sanction the defendant. *See id.; Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (courts are invested with inherent powers "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962))). Under these powers, I could dismiss the case, exclude evidence, or impose other sanctions as warranted by the conduct in question. *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 364–65 (D.Mass.1991).

▮ I may impose sanctions against a litigant "who is on notice that documents and information in its possession are relevant to litigation or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information." *ABC Home Health Services v. International Business Machines Corporation*, 158 F.R.D. 180, 182 (S.D.Ga. 1994) (quoting *William T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443, 1455 (C.D.Cal.1984)).

■ The specific elements of the claim are outlined in Jamie S. Gorelick *et al., Destruction of Evidence:*

> Gorelick, the leading and possibly the only treatise on the subject of destruction of evidence, identifies four elements that a court must find before imposing sanctions for the destruction:
>
> (1) An act of destruction;
>
> (2) Discoverability of the evidence;
>
> (3) An intent to destroy the evidence;
>
> (4) Occurrence of the act at a time after suit has been filed, or, if before, at a time when the filing is fairly perceived as imminent.
>
> Gorelick at §§ 3.8–3.12.
>
> As Gorelick notes, a fifth element is in a sense always required, namely prejudice to the opposing party, since sanctions are not .as a rule imposed where there has been no prejudice to a party. But since the extent of the prejudice bears more on the issue of the scope of the sanction to be imposed rather than the issue of whether any sanction should be imposed at all, discussion of that element may be deferred until the scope issue is addressed.

*White v. Office of the Public Defender for the State of Maryland,* 170 F.R.D. 138, 147 (D.Md.1997)(quoting Gorelick, *Destruction of Evidence* ).

■ The deletion of a paragraph from the Anderson document could qualify as an "act of destruction." In addition, it seems clear that the evidence is discoverable.[5] As noted above, a proceeding had begun before the MCAD, as a result of McGuire filing her charge on November 1, 1993, which Acufex was obliged to take very seriously. A lawsuit was imminent, unless the parties settled during the MCAD proceeding, or the MCAD successfully "conciliated" the claim. M.G.L. c. 151B § 5. Moreover, Acufex's obligations were especially clear in the light of the re-

cent changes to Rule 26(a) implementing automatic discovery obligations, without the necessity of filing discovery requests. One of Acufex's defenses to McGuire's claims will be the steps it took to remedy McGuire's claims of discrimination—to investigate the claim and then to discipline Hanna; McGuire will be obliged to challenge the *bona fides* of such actions. Acufex was also on notice that the personnel documents it was generating would likely qualify for automatic discovery.

### 2. Was It Misconduct To Delete A Paragraph From The Anderson Memorandum?

■ Defendant claims that there was no misconduct here at all. Palmer, the Human Resources Director, had an obligation and a responsibility to maintain accurate and truthful records for placement in personnel files. She discussed McGuire's complaint with Anderson, and concluded that the paragraph in question was a pejorative comment about McGuire, that it reflected only Anderson's opinion about McGuire's behavior: "I [Anderson] commented that an attractive woman cannot be one of the guys and this is misconduct on her part that has promoted misconduct among all parties involved." Since this conclusion/comment, according to Palmer, was unsubstantiated in light of her investigation, she deleted it.

Palmer plainly did have an obligation to see to it that the personnel records for McGuire were accurate. Under Massachusetts law, employees have the right to review their personnel records, if any are kept, by filing a written request to do so, M.G.L. c. 149 § 52C, and they can seek to correct them. Personnel records are defined as:

> [A] record *kept by an employer* that identifies an employee, to the extent that the record is used or has been used, or may affect or be used relative to that

---

5. According to one court:

> Finally, parties have been deemed to know that documents are relevant to litigation when it is reasonably foreseeable that a lawsuit will ensue and that the evidence will be discoverable in connection with that suit. Jamie S. Gorelick *et al., Destruction of Evidence* § 3.11 (1989). Occurrence of the act of destruction

after litigation has begun makes the imposition of sanctions especially appropriate, although again destructive acts occurring prior to the filing of a complaint where the potentiality of litigation is clear may also merit sanctions, *e.g., Wm. T. Thompson Co.,* 593 F.Supp. at 1455. *White v. Office of the Public Defender for the State of Maryland,* 170 F.R.D. 138, 148 (D.Md.1997).

employee's qualifications for employment, promotion, transfer, additional compensation or disciplinary action.

*Id.* (emphasis added). Under M.G.L. c. 149 § 52C, directors of human resources like Palmer, and those who perform similar functions for employers of twenty or more employees, including investigating and recording complaints, disciplinary proceedings, and personnel files, are required to assess the truthfulness and accuracy of an employer's personnel records. If Palmer had allowed the paragraph to be included in McGuire's personnel file as a personnel record knowing that it was "false," this would have given rise to a remedy on McGuire's part against Acufex. *See* M.G.L. c. 149 § 52C ("If an employer places in a personnel record any information which such employer knew or should have known to be false, then the employee shall have remedy through the collective bargaining agreement, other personnel procedure or judicial process to have such information expunged.") To the extent that Palmer's job was to make sure that no false information was knowingly placed into any personnel files, including McGuire's, she had the responsibility to read and edit Anderson's memorandum to make sure there was nothing false in it.[6]

To be sure, Anderson's comments suggest a certain lack of sensitivity, to say the least, to the issues underlying McGuire's claims. It is not too far a stretch to infer that Palmer not only saw Anderson's comments as a false evaluation of McGuire, but she also recognized that Anderson's observations of McGuire were sexist, "blaming the victim" fare, long discredited in the law of sexual harassment. To allow them to remain in the memo would unquestionably provide fodder for McGuire's claims.

Still, Hanna was the focus of McGuire's charges, and not Anderson. McGuire had no complaints about Anderson. Anderson's comment was simply his somewhat gratuitous evaluation of what McGuire had related concerning her conduct.

Under the very specific circumstances of this case, I cannot say that Acufex, through its Director Of Human Resources, engaged in actionable misconduct: that it lacked the right to edit out the deleted references, or that it somehow had an affirmative obligation to portray its staff, warts and all.

I am not suggesting any broad right to broom clean internal investigative files or edit personnel records willy-nilly.[7] Employers are plainly obliged to conduct their own internal investigations into allegations of sexual harassment and the like, and to do so in good faith. Such investigations are not privileged; employers clearly draft memos on the investigation with the expectation that they will eventually see the light of day. Plainly, they can call for drafts from their staff, before the final product, edit those drafts, and then discard them where, as here, the editing concerned obvious errors made by someone other than the accused harasser.[8]

6. The statute specifies certain information which must be kept as part of the personnel record "to the extent prepared by an employer of twenty or more employees." M.G.L. c. 149 § 52C. This information includes name, address, date of birth, etc., and "any other documents relating to disciplinary action regarding the employee." Arguably, Acufex had a duty to keep "any other documents relating to a disciplinary action" against Hanna, presumably including the Anderson memo. However, it is inconceivable that this obligation would include the transmission of incorrect information.

7. The destruction of relevant files is another matter, not at all implicated in this case. *See Jackson v. Harvard University,* 721 F.Supp. 1397, 1412–13 (D.Mass.1989).

8. To a degree, the fact that employers will be cautious in conducting internal investigations flows from the determination that such reports are not privileged. *See, e.g., University of Pennsylvania v. EEOC,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (affirming the rejection of privilege for excluding academic peer reviews from disclosure in a title VII case). In an analogous setting, addressing the issue of the self-critical sections of EEO reports, one commentator has noted:

> Employers argue that voluntary compliance with federal equal employment opportunity laws is necessary to implement an equal employment policy. Confidentiality ... ensures a bona fide effort toward compliance; if such reports cannot be used against employers, their plans will be prepared honestly. In the alternative, reports written while anticipating potential disclosure would be more conservative, and perhaps less honest.

To hold otherwise would be to create a new set of affirmative obligations for employers, unheard of in the law—to preserve all drafts of internal memos, perhaps even to record everything no matter how central to the investigation, or gratuitous.[9]

### 3. If It Were Misconduct, Should It Be Sanctioned?

■ In any event, even assuming *arguendo* that there was misconduct here, I do not believe that there is a basis for ordering sanctions. Courts have adopted a five-factor test in deciding whether to exclude evidence or impose other sanctions. *Headley v. Chrysler Motor Corp.*, 141 F.R.D. at 365 & n. 13. These are:

(1) whether the adversary was prejudiced by the destruction of evidence;

(2) whether the prejudice can be cured;

(3) the practical importance of the evidence;

(4) whether the destruction was in good or bad faith;

(5) the potential for abuse if the evidence is not excluded or the party is not otherwise sanctioned.

*See also Lewis v. Darce Towing Co., Inc.*, 94 F.R.D. 262, 266–67 (W.D.La.1982) (setting forth this same 5–factor test).

Normally, sanctions imposed based on the destruction of relevant evidence involve exclusion of evidence or permitting inferences to be drawn against the culpable party. *See, e.g., Nation–Wide Check Corp., Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 219 (1st Cir.1982) ("district court has discretion in determining how much weight to give the document destruction, and prophylactic and punitive considerations may appropriately be taken into account"). But as this Court has said, "apart possibly from cases where a party has maliciously destroyed evidence with the sole purpose of precluding an adversary from examining that relevant evidence ... all relevant federal cases—not to mention state cases—look to, among other things, prejudice vel non inuring to the adversary." *Headley*, 141 F.R.D. at 365 (footnotes and citations omitted).

The findings I have made so far suggest that the deletion here was done in good faith.[10] Palmer had an obligation and a responsibility to maintain accurate and truthful records for placement in personnel files. She investigated McGuire's complaint, and concluded the paragraph reflected only Anderson's unsubstantiated opinion about McGuire's behavior. Whether or not Palmer was anticipating litigation as a result of McGuire's MCAD charges, neither Palmer nor her employer, Acufex, were acting in bad faith when she deleted the paragraph in question from Anderson's memorandum, based on her own doubts as to its truthfulness and accuracy.

In any event, I find no prejudice to McGuire under the circumstances. The draft was turned over as soon as its existence was discovered by Anderson; McGuire was given the opportunity to fully explore the circumstances of the deletion.

■ I will allow McGuire to introduce these facts at trial. Even though the deleted statement does not bear on discriminatory animus of Hanna, it may be relevant on the question of the *bona fides* of Acufex's internal investigation, or it may be seen as an implied admission on the part of Palmer that the attitudes reflected in the paragraph are inappropriate,[11] or, depending upon the di-

---

Stephen C. Simpson, "The Self–Critical Analysis Privilege in Employment Law," 21 J. Corp. L. 577, 584 (1996).

**9.** Federal courts have struggled with comparable issues involving the government's obligations to preserve records and notes. *See United States v. Femia*, 9 F.3d 990 (1st Cir.1993) (sanctions under the Jencks Act available for bad faith nondisclosures where the defendant is prejudiced thereby).

**10.** Bad faith spoliation of evidence might require some harsher penalty be imposed by the Court.

*See Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 447 (1st Cir.1997) ("Certainly bad faith is a proper and important consideration in deciding whether and how to sanction conduct resulting in the destruction of evidence.").

**11.** For example, in a suit under the Age Discrimination in Employment Act, evidence that plaintiff destroyed diaries that recorded his relations with fellow-employees after showing them to the attorney originally retained to prosecute the action was relevant; fact that the plaintiff may have had a good faith reason for their destruction went to

rect, as part of the cross-examination of Anderson.

Under the circumstances, I do not doubt that if the unedited draft had been kept by Acufex (either in McGuire's personnel file or elsewhere such that it was readily available [12]), it would likely have been produced to McGuire during discovery. It has now been produced, and any possibility of prejudice cured.

## IV. CONCLUSION

I have found that the deletion by Palmer of a paragraph from Anderson's draft memorandum was not actionable misconduct. It resulted in no prejudice to McGuire. A full inquiry into the circumstances surrounding its creation and deletion has been conducted. Far from being prejudiced by this turn of events, McGuire may be able to turn it to her advantage. Acufex did not fail to produce documents in its possession pursuant to any order by this Court. It did not destroy or alter evidence so as to prejudice McGuire, and it did not act in bad faith in editing Anderson's draft of his memorandum before it was placed in McGuire's personnel file. Therefore, the motion for sanctions against Acufex is **DENIED**.

The stay entered by the Court on discovery (including a psychological examination of the plaintiff), pending my determination of the plaintiff's motion for sanctions, is now lifted, and all discovery must be completed by September 1, 1997.

**SO ORDERED.**

the weight of the evidence, not its admissibility. *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 843 (3d Cir.1977).

12. While the Anderson draft memo was preserved on the backup tapes for Acufex's computers, such information is not readily accessible. The backup tapes in question contained thousands of files: Indeed a printout of the listings of the filenames on the 1993 and 1994 backup tapes totaled 232 and 246 pages in length, respectively.