**Letha RICE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 94–1617.**

United States District Court,
District of Columbia.

Feb. 14, 1996.

18

Robert W. Haas, Haas & Dennis, McLean, VA, Kenneth Warren Smith, McLean, VA, for plaintiff.

Madelyn Elise Johnson, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM ORDER

DEBORAH ANN ROBINSON, United States Magistrate Judge.

Plaintiff became infected with the HIV-1 virus as a result of a blood transfusion given to her during bypass surgery at Walter Reed Army Medical Center on March 1, 1990. On July 20, 1990, the Army's Camp Memorial Blood Center notified Walter Reed that a previous donor tested HIV-positive and requested an investigation ("look back") to identify the recipient of the tainted blood. On August 17, 1990, Walter Reed confirmed through the "look back" process that plaintiff had received the HIV-tainted blood. On February 19, 1991, plaintiff was tested, and it was determined that she had become HIV-positive. Prior to September 9, 1991, plaintiff's counsel requested plaintiff's medical records from Walter Reed Army Medical Center. The tainted blood given to plaintiff was designated "donation C" and the subsequent donation which confirmed that the donor was HIV-positive was designated "donation D." In October and November of 1991, the remainder of "donation C" was exhausted by testing conducted by the Army, and is therefore unavailable to plaintiff. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion in Limine ("Plaintiff's Memorandum") at 4–5.

Plaintiff seeks entry of an order precluding the defendant from introducing any evidence, direct or circumstantial, as to the condition, testing, or test results of any of the "donation C" sample on the ground that the failure of the Army to preserve some portion of the sample violated FDA regulations, and that the Army's subsequent willful destructive testing of the remainder of "donation C," without notice to the plaintiff and an opportunity to have plaintiff's own experts present during such tests, amounted to spoliation of evidence after the government had notice of a probable claim by plaintiff. *See* Plaintiff's Motion at 1.

Defendant contends that there is no evidence of destruction of evidence in bad faith. Defendant claims that in October and November of 1991, when the testing was conducted, there was neither pending litigation nor any request from plaintiff for production

of the sample. Additionally, defendant contends that the extensive tests were necessary to evaluate the effectiveness of the FDA-approved screening vehicles in identifying the presence of the HIV virus in blood donations. *See* Defendant's Opposition to Plaintiff's Motion *in Limine* ("Defendant's Opposition") at 10–11. Finally, defendant contends that it has not denied access to the records or other evidence of the results of defendant's testing of the donor's blood in the case. In response to plaintiff's claim that some sanction is needed to avoid undue prejudice to plaintiff, the defendant maintains that the plaintiff is free to argue that she is unable to verify the accuracy of the test results because of the exhaustion of the donation. *See* Defendant's Opposition at 12.[1]

Plaintiff, in her reply, asserts that no showing of bad faith or deliberate destruction is necessary. Plaintiff argues that defendant's destruction of the remainder of "donation C" without notice to the plaintiff and an opportunity to have plaintiff's own experts present during the testing was knowing and willful. Plaintiff claims that she is prejudiced because she cannot now attempt to demonstrate either that the blood was improperly screened, or would have tested positive if retested for the presence of antibodies to HIV. *See* Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion *in Limine* ("Plaintiff's Reply") at 5–6. Plaintiff claims that the government was on notice of a potential claim from the time the donor's sample was found to be HIV-positive. Plaintiff's Reply at 3; *see* Plaintiff's Memorandum at 6.

*Discussion*

█ The controlling law in the District of Columbia regarding the loss of evidence in civil cases is set forth in *Battocchi v. Washington Hospital Center*, 581 A.2d 759 (D.C. 1990). The *Battocchi* court identified two

sub-categories of behavior within the meaning of the term "spoliation," the first being the deliberate destruction of evidence and the second, the failure to preserve evidence. Relying on precedent from two circuits and this court, the court in *Battocchi* held that

> [i]t is well-settled that a party's bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction. . . .
>
> . . . .
>
> The prevailing rule is that, to justify the inference, "the circumstances of the [destruction] must manifest bad faith."

*Battocchi v. Washington Hospital Center*, 581 A.2d at 765–66 (citations omitted).

█ The *Battocchi* court includes in the definition of "bad faith" destruction or concealment both "deliberate" destruction or concealment, and destruction or concealment with "reckless disregard" for the relevance of the evidence. *Battocchi v. Washington Hospital Center*, 581 A.2d at 766. The court reasoned that "[w]here the proffered evidence demonstrates that documents were concealed or destroyed in bad faith . . . a trial court may well abuse its discretion by refusing to allow factual inferences adverse to the culpable party to be suggested to the jury through an instruction or argument of counsel." *Id.* (citations omitted).[2]

█ The court in *Battocchi* found that some greater measure of discretion rested with the trial court where the loss of evidence is the result of the "failure to preserve" it, rather than any intentional or reckless conduct:

> When the loss or destruction of evidence is not intentional or reckless, by contrast, the

---

1. Defendant appears to assume that it is only the evidence of the testing *subsequent* to the initial screening which plaintiff seeks to exclude. *See* Defendant's Opposition at 2–3. However, plaintiff includes all testing and results thereof within the parameters of her motion. *See* Plaintiff's Motion *in Limine* at 1; Plaintiff's Memorandum at 1–2, 6, 22.

2. In considering what relief was warranted when confronted with destruction of evidence during

the course of an autopsy by plaintiff in a wrongful death action, after the lawsuit was filed, one court held that "the Court would be not only empowered, but required to take appropriate action, either to dismiss the suit altogether, or to ameliorate the ill-gotten advantage. A presumption as to certain evidence is simply not sufficient to protect against such conduct." *Barker v. Bledsoe*, 85 F.R.D. 545, 547–48 (W.D.Okla.1979).

issue is not strictly "spoliation" but rather a failure to preserve evidence. The rule that a fact-finder may draw an inference adverse to a party who fails to preserve relevant evidence within his exclusive control is well established in this jurisdiction....

....

.... [T]he trial judge has discretion to withhold the issue from the jury after consideration factors such as the degree of negligence or bad faith involved, the importance of the evidence involved, the importance of the evidence lost to the issues and hand, and the availability of other proof enabling the party deprived of the evidence to make the same point.

*Battocchi v. Washington Hospital Center,* 581 A.2d at 766–67 (citations omitted); *see Williams v. Washington Hospital Center,* 601 A.2d 28, 32 (D.C.1991); *cf. Johnson v. Washington Metropolitan Area Transit Authority,* 764 F.Supp. 1568, 1579 (D.D.C.1991) (applying same analysis under "federal doctrine" of "the so-called adverse inference rule" rather than the "spoliation of evidence doctrine" articulated by the District of Columbia Court of Appeals).

■ By contrast, "... upon a finding of gross indifference to or reckless disregard for the relevance of the evidence to a possible claim, the trial court *must* submit the issue of lost evidence to the trier of fact with corresponding instructions allowing an adverse inference." *Id.* (emphasis supplied).

The precise issue presented in the instant action—that is, what relief, if any, is warranted by the exhaustion of relevant evidence by defendant prior to the filing of a claim or lawsuit—appears to be one of first impression.[3] However, the undersigned, applying the principles discussed herein to the facts of the instant action, concludes that two findings are compelled: first, that defendant had notice of a potential claim at the time of the testing, and second, that the testing was conducted with reckless disregard for the relevance of the evidence.

■ With respect to notice, defendant maintains that at the time the testing was conducted, there was no pending administrative claim, no litigation had been filed and there was no outstanding request from plaintiff's counsel for production of a sample of "donation C." However, at the time of the testing in October and November of 1991, defendant had *actual* knowledge that (1) the donor of "donation C" had tested positive for HIV–1; (2) that plaintiff—having been referred for testing by defendant—also tested positive for HIV–1; and (3) that plaintiff's counsel had requested plaintiff's medical records from Walter Reed Army Medical Center. The suggestion that defendant was without notice of a potential claim at the time it exhausted the remainder of "donation C" is therefore simply implausible. *See Washington Gas Light Co. v. Biancaniello,* 183 F.2d 982, 985 (D.C.Cir.1950) ("Certainly it would have been more reasonable for the appellant to have preserved this piece of evidence in view of *the possibility of litigation* arising out of the explosion than to have disposed of it[.]" (emphasis supplied); *cf. May v. Moore,* 424 So.2d 596, 603 (Ala.1982) ("Proof may be made concerning a party purposefully and wrongfully destroying a document which he knew was supportive of the interest of his opponent, whether or not an action involving such interest was pending at the time of the destruction.").

■ With respect to its intent, defendant offers the declaration of the official responsible for coordinating the Department of the Army's blood-banking program. Relying on the declaration, defendant maintains that it had a compelling public health interest in testing "donation C" to assess the accuracy of measures to detect the HIV virus in donors who were HIV-positive but had not yet built up sufficient antibodies to be reactive to the FDA-approved screening vehicles then available. Declaration of Richard C. Platte

---

**3.** Another court observed that "[t]here is ... an alarming lack of authority" for even the more obvious proposition that "a party to a lawsuit cannot destroy an item of evidence in the course of, or after, his expert has examined it, tested it,

and formed an opinion thereon, but before [the opposing party] [is] given notice or an opportunity to likewise examine it." *Barker v. Bledsoe,* 85 F.R.D. at 547.

("Platte Dec."), ¶ 5. Defendant's declarant states simply that "all of the sample from 'donation C' was used in testing[,]" Plattte Dec., ¶ 6, and makes no effort to explain why defendant's public health interest could not have been accomplished without exhaustion of the remainder of the sample.[4] The testing, while conducted for a salutary purpose, was nonetheless undertaken with "gross indifference or reckless disregard" for the relevance of the sample as evidence with respect to a potential claim of which it had notice. *See Battocchi v. Washington Hospital Center*, 581 A.2d at 767. Put another way, defendant decided that exhaustion of the remainder of "donation C" was more important than preservation of some portion of it as evidence with respect to plaintiff's potential claim.

*Conclusion*

■ Given the findings (1) that defendant had notice of a potential claim by plaintiff arising from her receipt of blood from "donation C," and (2) that defendant thereafter acted with "gross indifference or reckless disregard" to the relevance of "donation C" to the claim, an adverse inference with respect to the testing of "donation C" is compelled. *Battocchi v. Washington Hospital Center*, 581 A.2d at 766 (". . . a trial court may well abuse its discretion by refusing to allow factual inferences adverse to the culpa-

ble party" where evidence is unavailable as a result of gross indifference or reckless disregard for its relevance).[5] Accordingly, the undersigned will grant plaintiff's motion *in limine* in part, and provide that the finder of fact—in this instance, the trial court—shall, absent modification of this order, apply an adverse inference to all evidence offered by defendant of the condition, testing or test results of any sample of "donation C."[6]

For the foregoing reasons, it is, this 14th day of February, 1996,

**ORDERED** that Plaintiff's Motion *in Limine* be, and the same hereby is **GRANTED IN PART,** and that absent further order, the finder of fact shall apply an adverse inference to all evidence offered by defendant of the condition, testing or test results of any sample of "donation C."

---

4. Indeed, with respect to "donation D," the need to preserve some portion of the remainder was recognized:

> 15 Oct 91
> Sally,
>     We have about
> 40 beads left—
> do you want us
> to hold them for a
> while?

Plaintiff's Memorandum at 5 and Exhibit 11 thereto. Defendant's own records thus belie its contention that the need to preserve a portion of relevant evidence was not known.

5. Even upon a finding of "failure to preserve" evidence, rather than "gross indifference or reckless disregard" for the relevance of the evidence, the adverse inference would be warranted in an exercise of the court's discretion, given (1) defendant's degree of, at a minimum, negligence; (2) the importance of the evidence; and (3) the absence of other evidence enabling plaintiff to make the same point. *See Battocchi v. Washing-*

*ton Hospital Center*, 581 A.2d at 767; *Williams v. Washington Hospital Center*, 601 A.2d at 32.

6. The preclusion sanction, which plaintiff requested, has typically been ordered in instances in which a plaintiff has engaged in spoliation of evidence, preventing defendant from offering any evidence with respect to liability. *See, e.g., State Farm Fire & Casualty v. Frigidaire*, 146 F.R.D. 160, 163 (N.D.Ill.1992) (in product liability action, bar of all evidence of condition of allegedly defective product and dismissal of action imposed as sanctions for intentional disposal of product by plaintiff's subrogee).

Defendant proposed as relief allowing plaintiff to argue "that [she] is unable to verify the accuracy of [the] results because no sample of the blood remains or that the court should weigh the evidence accordingly." Defendants Opposition at 12. However, the undersigned finds that the relief proposed by defendant is no more than a statement of the obvious, and does not constitute a sanction at all.