**Jorge H. TREVINO, M.D., individually and d/b/a McAllen Maternity Clinic, Petitioner,**

v.

**Genaro ORTEGA, individually and a/n/f of Linda Ortega, a minor, Respondent.**

No. 97–0280.

Supreme Court of Texas.

Argued Dec. 3, 1997.

Decided June 5, 1998.

Rehearing Overruled July 3, 1998.

Thomas F. Nye, Diana L. Faust, Corpus Christi, Diana L. Faust, Dallas, Linda C. Breck, Corpus Christi, R. Brent Cooper, Dallas, for Petitioner.

Ricky J. Poole, Randall C. Jackson, Jr., San Antonio, for Respondent.

ENOCH, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HECHT, SPECTOR, OWEN, ABBOTT and HANKINSON, Justices, join.

The issue in this case is whether this Court should recognize an independent cause of action for intentional or negligent spoliation of evidence by parties to litigation.[1] The court of appeals held that Texas recognizes a cause of action for evidence spoliation. 938 S.W.2d 219, 223. Because we determine that spoliation does not give rise to independent damages, and because it is better remedied within the lawsuit affected by spoliation, we decline to recognize spoliation as a tort cause of action. Therefore, we reverse the court of appeals' judgment and render judgment that Ortega take nothing.

In 1988, Genaro Ortega, individually and as next friend of his daughter, Linda Ortega, sued Drs. Michael Aleman and Jorge Trevio and McAllen Maternity Clinic for medical malpractice. Ortega alleged that the defendants were negligent in providing care and treatment during Linda's birth in 1974.[2] Discovering that Linda's medical records from the birth had been destroyed, Ortega then sued Dr. Trevio in a separate suit for intentionally, recklessly, or negligently destroying Linda Ortega's medical records from the birth.

It is the appeal from this latter action that is before us. Here, Ortega claims that Trevio had a duty to preserve Linda's medical records and that destroying the records materially interferes with Ortega's ability to prepare his medical malpractice suit. Ortega explains that Aleman, the attending physician, testified that he has no specific recollection of the delivery and, therefore, the missing medical records are the only way to determine the procedures used to deliver Linda. Because the medical records are missing, Ortega's expert cannot render an opinion about Aleman's, the Clinic's, or Trevio's negligence.

Responding to Ortega's spoliation suit, Trevio specially excepted and asserted that Ortega failed to state a cause of action. The trial court sustained Trevio's special exception and gave Ortega an opportunity to amend. But Ortega declined to amend and the trial court dismissed the case. Ortega appealed. The court of appeals reversed the trial court's dismissal order and held that Texas recognizes an independent cause of action for evidence spoliation. 938 S.W.2d at 223.

This Court treads cautiously when deciding whether to recognize a new tort. *See generally Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 404–06 (Tex.1993); *Graff v.*

---

1. Whether we recognize a cause of action for spoliation of evidence by persons who are not parties to the underlying lawsuit is not before the Court, and therefore we do not consider it.

2. At the time of submission, this case was still pending in district court.

*Beard,* 858 S.W.2d 918, 920 (Tex.1993); *Boyles v. Kerr,* 855 S.W.2d 593, 600 (Tex. 1993). While the law must adjust to meet society's changing needs, we must balance that adjustment against boundless claims in an already crowded judicial system. We are especially averse to creating a tort that would only lead to duplicative litigation, encouraging inefficient relitigation of issues better handled within the context of the core cause of action. We thus decline to recognize evidence spoliation as an independent tort.

A number of jurisdictions that have considered the issue have been hesitant to recognize an independent tort for evidence spoliation for a variety of different reasons. *See, e.g., Wilson v. Beloit Corp.,* 921 F.2d 765, 767 (8th Cir.1990) (no spoliation tort under Arkansas law); *Edwards v. Louisville Ladder Co.,* 796 F.Supp. 966, 970 (W.D.La.1992) (existence of adequate remedies); *Christian v. Kenneth Chandler Constr. Co.,* 658 So.2d 408, 412–13 (Ala.1995) (no cause of action under facts of case but noting previous cases allowing jury instruction on the spoliation presumption); *La Raia v. Superior Court,* 150 Ariz. 118, 722 P.2d 286, 289 (1986) (existence of adequate remedies); *Gardner v. Blackston,* 185 Ga.App. 754, 365 S.E.2d 545, 546 (1988) (no spoliation tort under Georgia law); *Boyd v. Travelers Ins. Co.,* 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 270 (1995) (traditional negligence remedies sufficiently address the issue and remove the need to create an independent cause of action); *Murphy v. Target Prods.,* 580 N.E.2d 687, 690 (Ind. Ct.App.1991) (no common-law duty for employer to preserve potential evidence for employee's benefit); *Monsanto Co. v. Reed,* 950 S.W.2d 811, 815 (Ky.1997) (existence of adequate remedies); *Miller v. Montgomery County,* 64 Md.App. 202, 494 A.2d 761, 767–68 (1985) (existence of adequate remedies); *Panich v. Iron Wood Prods. Corp.,* 179 Mich. App. 136, 445 N.W.2d 795, 797 (1989) (no cause of action under facts of case); *Brown v. Hamid,* 856 S.W.2d 51, 56–57 (Mo.1993) (existence of adequate remedies and not appropriate on facts of case).[3]

Evidence spoliation is not a new concept. For years courts have struggled with the problem and devised possible solutions. Probably the earliest and most enduring solution was the spoliation inference or *omnia praesumuntur contra spoliatorem:* all things are presumed against a wrongdoer. *See, e.g. Rex v. Arundel,* 1 Hob. 109, 80 Eng. Rep. 258 (K.B.1617) (applying the spoliation inference); *The Pizarro,* 15 U.S. (2 Wheat.) 227, 4 L.Ed. 226 (1817) (declining to apply the spoliation inference); *Brown,* 856 S.W.2d at 56 (noting that Missouri has recognized a spoliation inference for over a century). In other words, within the context of the original lawsuit, the factfinder deduces guilt from the destruction of presumably incriminating evidence.

This traditional response to the problem of evidence spoliation properly frames the alleged wrong as an evidentiary concept, not a separate cause of action. Spoliation causes no injury independent from the cause of action in which it arises. If, in the ordinary course of affairs, an individual destroys his or her own papers or objects, there is no independent injury to third parties. The destruction only becomes relevant when someone believes that those destroyed items are instrumental to his or her success in a lawsuit.

Even those courts that have recognized an evidence spoliation tort note that damages are speculative. *See, e.g., Smith v. Superior Court,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829, 835 (1984); *Petrik v. Monarch Printing Corp.,* 150 Ill.App.3d 248, 103 Ill.Dec. 774, 501 N.E.2d 1312, 1320 (1986). The reason that the damages inquiry is difficult is be-

---

**3.** Courts in more than twenty states have considered the issue, but the courts of only six states have recognized a cause of action for negligent or intentional spoliation. *See Hazen v. Municipality of Anchorage,* 718 P.2d 456, 463 (Alaska 1986) (intentional); *Velasco v. Commercial Bldg. Maintenance Co.,* 169 Cal.App.3d 874, 215 Cal. Rptr. 504, 506 (1985) (negligent); *Smith v. Superior Court,* 151 Cal.App.3d 491, 198 Cal.Rptr.

829, 832–33 (1984) (intentional); *Bondu v. Gurvich,* 473 So.2d 1307, 1312–13 (Fla.Dist.Ct.App. 1984) (negligent); *Callahan v. Stanley Works,* 306 N.J.Super. 488, 703 A.2d 1014, 1017–19 (1997) (negligent); *Coleman v. Eddy Potash, Inc.,* 120 N.M. 645, 905 P.2d 185, 189 (1995) (intentional); *Smith v. Howard Johnson Co.,* 67 Ohio St.3d 28, 615 N.E.2d 1037 (1993) (intentional).

cause evidence spoliation tips the balance in a lawsuit; it does not create damages amenable to monetary compensation.

Our refusal to recognize spoliation as an independent tort is buttressed by an analogous line of cases refusing to recognize a separate cause of action for perjury or embracery.[4] Like evidence spoliation, civil perjury and civil embracery involve improper conduct by a party or a witness within the context of an underlying lawsuit. A number of courts considering the issue have refused to allow the wronged party to bring a separate cause of action for either perjury or embracery. *See, e.g., Cooper v. Parker–Hughey*, 894 P.2d 1096, 1100 n. 3 (Okla.1995) (listing a number of jurisdictions that refuse to recognize a separate civil cause of action for perjury); *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 918 P.2d 1274, 1296 (1996) (embracery); *Trudell v. Heilman*, 158 Cal. App.3d 251, 204 Cal.Rptr. 551, 553 (1984) (embracery disallowed unless plaintiff has no other means of redress); *Hoston v. Silbert*, 514 F.Supp. 1239, 1241 (D.D.C.1981) (embracery), *rev'd on other grounds*, 681 F.2d 876 (D.C.Cir.1982). These decisions rely on public policy concerns such as ensuring the finality of judgments, avoiding duplicative litigation, and recognizing the difficulty in calculating damages. *Kessler v. Townsley*, 132 Fla. 744, 182 So. 232, 232 (1938) (res judicata); *OMI*, 918 P.2d at 1290, 1293 (duplicative litigation and speculative damages). Similarly, recognizing a cause of action for evidence spoliation would create an impermissible layering of liability and would allow a plaintiff to collaterally attack an unfavorable judgment with a different factfinder at a later time, in direct opposition to the sound policy of ensuring the finality of judgments.

We share Ortega's concern that, when spoliation occurs, there must be adequate measures to ensure that it does not improperly impair a litigant's rights, but we disagree that the creation of an independent tort is warranted. It is simpler, more practical, and more logical to rectify any improper conduct within the context of the lawsuit in which it is relevant. Indeed, evolving remedies, sanc-

tions and procedures for evidence spoliation are available under Texas jurisprudence. Trial judges have broad discretion to take measures ranging from a jury instruction on the spoliation presumption to, in the most egregious case, death penalty sanctions. *See, e.g., Watson v. Brazos Elec. Power Coop., Inc.*, 918 S.W.2d 639, 643 (Tex.App.—Waco 1996, writ denied) (holding that trial court erred when it failed to give a spoliation instruction); *Ramirez v. Otis Elevator Co.*, 837 S.W.2d 405, 412 (Tex.App.—Dallas 1992, writ denied) (noting that a trial court possesses wide discretion in awarding discovery sanctions); *see also* Tex.R. Civ. P. 215(b). As with any discovery abuse or evidentiary issue, there is no one remedy that is appropriate for every incidence of spoliation; the trial court must respond appropriately based upon the particular facts of each individual case.

Ortega also argues that the failure to maintain Linda's medical records violated a statutory duty to maintain such records as required by section 241.103(b) of the Texas Health and Safety Code. Assuming without deciding that such a duty exists and that there was a breach of that duty, it does not necessarily follow that an independent cause of action arises. Nor does a cause of action necessarily arise from a party's obligation to comply with the rules of discovery. As we indicated above, obligations not to destroy evidence arise in the context of particular lawsuits; consequently, spoliation is best remedied within the lawsuit itself, not as a separate tort.

\* \* \* \* \*

We reverse the court of appeals' judgment and render judgment that Ortega take nothing.

BAKER, Justice, concurring.

The issue in this case is whether Texas recognizes a cause of action for evidence spoliation. The Court holds today that Texas does not. I agree with the Court's conclusion that a separate cause of action is not warranted. However, I write separately to

---

4. Embracery is "[t]he crime of attempting to influence a jury corruptly to one side or the other." Black's Law Dictionary 522 (6th ed.1990).

consider Ortega's claim that the existing remedies for evidence spoliation are inadequate to protect litigants faced with evidence destruction.

Available remedies within the context of litigation can be effective methods for remedying prejudice resulting from evidence spoliation. However, Texas courts have been hesitant to apply remedies for spoliation. Evidence spoliation is a serious problem that can have a devastating effect on the administration of justice. Accordingly, I believe it appropriate to review what remedies are available to Texas trial courts to protect nonspoliating litigants and when the remedies should be applied.

### I. ORTEGA'S CONTENTIONS

Ortega argues that a cause of action for evidence spoliation is necessary to protect against evidence destruction because existing remedies are inadequate. Initially, Ortega asserts that Texas's remedies against spoliation only protect against intentional destruction. Thus, he claims that unless there is evidence of intent, a party will be left without a remedy.

Ortega also claims that courts have failed to use the wide variety of remedies that are available in other states. He contends that the spoliation presumption is the only remedy Texas courts have applied and that it is simply insufficient. Moreover, he asserts that courts are unclear on the presumption's effect, and in cases such as this one, courts may not allow plaintiffs to survive summary judgment and reap the benefits of the spoliation presumption.

Lastly, Ortega asserts that Texas has no method to remedy prelitigation spoliation. He states that in many instances, courts refrain from sanctioning parties for prelitigation conduct because our rules of civil procedure only allow trial courts to sanction parties for discovery abuse during pending litigation. *See* TEX.R. CIV. P. 215.

### II. RESPONSE TO ORTEGA'S CONTENTIONS

#### A. WHEN TO REMEDY SPOLIATION OF EVIDENCE

Remedies for the spoliation of evidence serve three purposes. First, they punish the spoliator for destroying relevant evidence. Second, they deter future spoliators. *See Nation–Wide Check Corp. v. Forest Hills Distribs.,* 692 F.2d 214, 218 (1st Cir.1982). And third, perhaps most importantly, they serve an evidentiary function. *See Sacramona v. Bridgestone/Firestone, Inc.,* 106 F.3d 444, 446 (1st Cir.1997). When evidence spoliation prejudices nonspoliating parties, courts can levy a sanction or submit a presumption that levels the evidentiary playing field and compensates the nonspoliating party. *See Turner v. Hudson Transit Lines,* 142 F.R.D. 68, 75 (S.D.N.Y.1991); *Bachmeier v. Wallwork Truck Ctrs.,* 507 N.W.2d 527, 533 (N.D. 1993).

When a party believes that another party has improperly destroyed evidence, it may either move for sanctions or request a spoliation presumption instruction. At this point, the trial court should determine whether sanctions or a presumption are justified. This is a question of law for the trial court. *See Miller v. Stout,* 706 S.W.2d 785, 787–88 (Tex.App.—San Antonio 1986, no writ) ("Only ultimate issues of fact are to be submitted to a jury.... Such proceedings as those involving determination of motions for sanctions because of failure to respond to discovery requests ... often involve resolution [by a judge] of questions of fact."); *Massie v. Hutcheson,* 270 S.W. 544, 545 (Tex. Com.App.1925, holding approved) (stating that determining whether a party intentionally destroyed evidence is a preliminary question for the court to decide); *see also Battocchi v. Washington Hosp. Ctr.,* 581 A.2d 759, 767 (D.C.Ct.App.1990) (holding that a trial court has the discretion to submit a jury instruction after it reviews the spoliator's degree of fault, the spoliated evidence's importance, and the availability of other proof); *Chapman v. Auto Owners Ins. Co.,* 220 Ga. App. 539, 469 S.E.2d 783 (1996) (stating that in deciding whether to exclude testimony, the trial court should determine the spoliator's culpability and the prejudice caused by the destruction of evidence). This legal inquiry involves considering: (1) whether there was a duty to preserve evidence; (2) whether the

alleged spoliator either negligently or intentionally spoliated evidence; and (3) whether the spoliation prejudiced the nonspoliator's ability to present its case or defense.

## 1. Duty

Upon a spoliation complaint, the threshold question should be whether the alleged spoliator was under any obligation to preserve evidence. A party may have a statutory, regulatory, or ethical duty to preserve evidence. *See DeLaughter v. Lawrence County Hosp.*, 601 So.2d 818, 821–22 (Miss.1992) (finding a duty to preserve evidence under a statute that required hospitals to maintain certain medical records). For example, the Texas Health and Safety Code requires hospitals to maintain patient's medical records for a certain period of time. *See* TEX. HEALTH & SAFETY CODE § 241.103. The statute clearly creates a duty to maintain records. *Cf. DeLaughter*, 601 So.2d at 821–22 (construing MISS.CODE ANN. §§ 41–9–63, –69). Similarly, federal regulations require certain hospitals to retain medical records for at least five years. *See* 42 C.F.R. § 482.24 (1998). These regulations can also create a duty to maintain records. *See also Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1418–19 (10th Cir.1987) (holding that 29 C.F.R. § 1602.14 creates a duty to preserve evidence); *EEOC v. Jacksonville Shipyards, Inc.*, 690 F.Supp. 995, 998 (M.D.Fla.1988) (same). Finally, section 7.05 of the *Code of Medical Ethics* provides an example of a potential ethical duty to retain certain documents. Section 7.05 states that physicians have "an obligation to retain patient records which may reasonably be of value to a patient.... In all cases, medical records should be kept for at least as long as the length of time of the statute of limitations for medical malpractice claims." *See* COUNCIL ON ETHICS & JUDICIAL AFFAIRS, AMERICAN MED. ASS'N, CODE OF MEDICAL ETHICS, § 7.05 (1994). In certain circumstances, a court could find that this ethical duty rises to the level of a legal duty to preserve records. Thus, if a party violates a statutory, regulatory, or ethical duty to preserve evidence, the party may be subject to either sanctions or a spoliation presumption. Without potential consequences, these duties are rendered meaningless.

Other jurisdictions have held that there is also a common law duty to preserve evidence. These courts have held that a party must preserve documents, tangible items, and information that are "relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence...." *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443, 1455 (C.D.Cal.1984); *see also Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993); *Unigard Sec. Ins. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 365, 367–69 (9th Cir.1992); *Welsh v. United States*, 844 F.2d 1239, 1241–42, 1246–48 (6th Cir.1988); *Turner*, 142 F.R.D. at 72; *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D.Minn.1989); *Fire Ins. Exch. v. Zenith Radio Corp.*, 103 Nev. 648, 747 P.2d 911, 913–14 (1987). Notably, there are two aspects of this duty to preserve evidence: (1) when the duty arises and (2) what documents or items a party must preserve.

The first part of the duty inquiry involves determining when the duty to preserve evidence arises. While there is no question that a party's duty to preserve relevant evidence arises during pending litigation, courts have been less clear about whether a duty exists prelitigation. *See* TEX.R. CIV. P. 215. A number of courts recognize the need for a duty to preserve evidence prelitigation. *See, e.g., Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1158–59 (1st Cir.1996); *Dillon*, 986 F.2d at 267; *Welsh*, 844 F.2d at 1241–42, 1246–48; *Capellupo*, 126 F.R.D. at 551; *Fire Ins. Exch.*, 747 P.2d at 914. I agree with these courts. A party should not be able to subvert the discovery process and the fair administration of justice simply by destroying evidence before a claim is actually filed. *See Fire Ins. Exch.*, 747 P.2d at 913.

The next question then is at what point during prelitigation does the duty arise. Courts that have imposed a prelitigation duty to preserve evidence have held that once a party is on "notice" of potential litigation a duty to preserve evidence exists. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1992); *McGuire v. Acufex Microsurgical,*

*Inc.,* 175 F.R.D. 149, 153 (D.Mass.1997); *ABC Home Health Servs., Inc. v. IBM Corp.,* 158 F.R.D. 180, 182 (S.D.Ga.1994); *Turner,* 142 F.R.D. at 72–73; *Computer Assocs. Int'l, Inc. v. American Fundware,* 133 F.R.D. 166, 169 (D.Colo.1990); *Capellupo,* 126 F.R.D. at 551; *Wm. T. Thompson Co.,* 593 F.Supp. at 1455; *Fire Ins. Exch.,* 747 P.2d at 914; *Burns v. Cannondale Bicycle Co.,* 876 P.2d 415, 419 (Utah Ct.App.1994). Most courts have not elaborated on the concept of notice. But, a few courts have determined that a party is on notice of potential litigation when the litigation is reasonably foreseeable. *See Blinzler,* 81 F.3d at 1159 (stating that the defendant was aware of circumstances that were likely to give rise to future litigation and that a reasonable fact finder could conclude that the defendant was on notice that evidence was relevant to likely litigation); *Rice v. United States,* 917 F.Supp. 17, 20 (D.D.C.1996) (finding that the defendant was on notice of potential litigation because it was aware of circumstances that were likely to give rise to future litigation); *White v. Office of the Public Defender,* 170 F.R.D. 138, 148 (D.Md.1997) ("[P]arties have been deemed to know that documents are relevant to litigation when it is reasonably foreseeable that a lawsuit will ensue...."); *Shaffer v. RWP Group, Inc.,* 169 F.R.D. 19, 24 (E.D.N.Y. 1996) (stating that sanctions are appropriate when the defendant "knew or should have known that the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation"); *see also* JAMIE S. GORELICK ET AL, DESTRUCTION OF EVIDENCE §§ 1.22, 3.1 (1989); Donald H. Flanary, Jr. & Bruce M. Flowers, *Spoliation of Evidence: Let's Have a Rule in Response,* 60 DEF. COUNS. J. 553, 555–56 (1993); Steffen Nolte, *The Spoliation Tort: An Approach to Underlying Principles,* 26 ST. MARY'S L.J. 351, 371–72 (1995).

This Court has dealt with a similar issue in *National Tank Co. v. Brotherton,* 851 S.W.2d 193 (Tex.1993). In *National Tank* the Court defined "anticipation of litigation" in the context of whether a party should be allowed to assert an investigative privilege. The Court focused on how to determine when a party reasonably foresees or anticipates litigation. Importantly, we did not require actual notice of the potential litigation for a party to anticipate litigation. Instead, we recognized that *"common sense* dictates that a party may reasonably anticipate suit being filed ... before the plaintiff manifests an intent to sue." *National Tank,* 851 S.W.2d at 204 (emphasis added). Consequently, the Court held that to determine when a party reasonably anticipates or foresees litigation, trial courts must look at the totality of the circumstances and decide whether a reasonable person in the party's position would have anticipated litigation and whether the party actually did anticipate litigation. *See National Tank,* 851 S.W.2d at 207.

The *National Tank* test is workable in the spoliation context; yet, it must be modified somewhat. When a party destroys evidence, the party is not seeking the protection of a privilege as in *National Tank.* In *National Tank* the party asserting the investigative privilege had the burden to prove that it subjectively anticipated litigation and that its belief was reasonable. On the other hand, in spoliation cases, the nonspoliating party bears the burden to prove that the spoliating party anticipated litigation. Because a spoliating party may be subject to the sting of a sanction, in most instances it will be impossible for nonspoliating party to show that the spoliating party subjectively anticipated litigation. It is highly unlikely that a spoliating party will readily admit that it subjectively anticipated litigation. Accordingly, in spoliation cases a party should be found to be on notice of potential litigation when, after viewing the totality of the circumstances, the party either actually anticipated litigation *or* a reasonable person in the party's position would have anticipated litigation. While in certain circumstances a party may not reasonably foresee litigation until the party is actually notified of the opposing party's intent to file suit, there may be times when certain independent facts will put a party on notice of the potential for litigation. Whether a party actually did or reasonably should have anticipated litigation is simply a fact issue for the trial court to decide by viewing the totality of the circumstances.

Once a trial court determines when a duty to preserve evidence arises, the court should

then look to the second part of the duty inquiry—what evidence a party must preserve. A party that is on notice of either potential or pending litigation has an obligation to preserve evidence that is relevant to the litigation. "While a litigant is under no duty to keep or retain every document in its possession ... it is under a duty to preserve what it knows, or reasonably should know is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, [or] is the subject of a pending discovery sanction." *Wm. T. Thompson,* 593 F.Supp. at 1455; *see also Dillon,* 986 F.2d at 267; *Capellupo,* 126 F.R.D. at 551; *Fire Ins. Exch.,* 747 P.2d at 914. Again, the focus is on whether a party is on notice that a particular piece of evidence is relevant. *See Akiona v. United States,* 938 F.2d 158, 161 (9th Cir.1991).

### 2. Breach

If the trial court finds that a party has a duty to preserve evidence, it should then decide whether the party breached its duty. Parties need not take extraordinary measures to preserve evidence; however, a party should exercise reasonable care in preserving evidence. *See Hirsch v. General Motors Corp.,* 266 N.J.Super. 222, 628 A.2d 1108, 1122 (1993).

Some courts have allowed sanctions or the presumption only for intentional or bad faith spoliation. *See Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir.1997); *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir.1997); *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir.1995); *Spesco, Inc. v. General Elec. Co.,* 719 F.2d 233, 239 (7th Cir. 1983); *Gumbs v. International Harvester, Inc.,* 718 F.2d 88, 96 (3d Cir.1983); *Vick v. Texas Employment Comm'n,* 514 F.2d 734, 737 (5th Cir.1975); *State v. Langlet,* 283 N.W.2d 330, 333 (Iowa 1979); *Brown v. Hamid,* 856 S.W.2d 51, 56–57 (Mo.1993). However, other courts have held parties accountable for either intentional or negligent spoliation. *See Langley v. Union Elec. Co.,*

107 F.3d 510, 514 (7th Cir.1997); *Sacramona,* 106 F.3d at 447; *Dillon,* 986 F.2d at 267; *Unigard Sec. Ins.,* 982 F.2d at 368 n. 2; *Pressey v. Patterson,* 898 F.2d 1018, 1023–24 (5th Cir.1990); *Welsh,* 844 F.2d at 1246–47, 1249; *Turner,* 142 F.R.D. at 75–76; *Sweet v. Sisters of Providence,* 895 P.2d 484, 491 (Alaska 1995); *Public Health Trust v. Valcin,* 507 So.2d 596, 599 (Fla.1987); *Hamann v. Ridge Tool Co.,* 213 Mich.App. 252, 539 N.W.2d 753, 756–57 (1995); *DeLaughter,* 601 So.2d at 822; *Bachmeier,* 507 N.W.2d at 533.

Because parties have a duty to reasonably preserve evidence, it is only logical that they should be held accountable for either negligent or intentional spoliation. While allowing a court to hold a party accountable for negligent as well as intentional spoliation may appear inconsistent with the punitive purpose of remedying spoliation, it is clearly consistent with the evidentiary rationale supporting it because the remedies ameliorate the prejudicial effects resulting from the unavailability of evidence. *See Turner,* 142 F.R.D. at 75–76. In essence, it places the burden of the prejudicial effects upon the culpable spoliating party rather than the innocent nonspoliating party. *See Welsh,* 844 F.2d at 1249; *Turner,* 142 F.R.D. at 75.[1]

A spoliator can defend against an assertion of negligent or intentional destruction by providing other explanations for the destruction. For example, if the destruction of the evidence was beyond the spoliator's control or done in the ordinary course of business, the court may find that the spoliator did not violate a duty to preserve evidence. Importantly though, when a party's duty to preserve evidence arises before the destruction or when a policy is at odds with a duty to maintain records, the policy will not excuse the obligation to preserve evidence. *See generally Turner,* 142 F.R.D. at 73.

### 3. Prejudice to Nonspoliator

Though a party may have improperly spoliated evidence, the nonspoliating party may not be entitled to a remedy. One of the key reasons for allowing remedies for spoliation

---

**1.** Furthermore, by punishing negligent conduct, courts will deter future spoliation. The theory of deterrence is not merely limited to deterring intentional conduct. It applies equally to negligent conduct. *See Turner,* 142 F.R.D. at 75 n. 3.

is that the spoliation has prejudiced the nonspoliating party. *See Sacramona,* 106 F.3d at 446; *Dillon,* 986 F.2d at 267; *Unigard Sec. Ins.,* 982 F.2d at 368; *Headley v. Chrysler Motor Corp.,* 141 F.R.D. 362, 365 (D.Mass. 1991); *Turner,* 142 F.R.D. at 76–77; *Valcin,* 507 So.2d at 599. A party is entitled to a remedy only when evidence spoliation hinders its ability to present its case or defense. See, e.g., *Dillon,* 986 F.2d at 267–68; *Sweet,* 895 P.2d at 491.

Courts should look to a variety of factors in deciding whether destroying evidence has prejudiced a party. Most importantly, courts should consider the destroyed evidence's relevancy. *See* Flanary & Flowers, *supra,* at 555. The more relevant the destroyed evidence, the more harm the nonspoliating party will suffer from its destruction. In many circumstances, however, courts may have difficulty in determining relevancy because the evidence is no longer available for the court to review. Accordingly, courts should give deference to the nonspoliating party's assertions about relevancy. That the evidence was destroyed may be some evidence of its relevancy. *See Welsh,* 844 F.2d at 1246 (quoting *Nation–Wide Check Corp.,* 692 F.2d at 218). Generally, when a party has destroyed evidence intentionally or in bad faith, the evidence was relevant and harmful to the spoliating party's case. Absent evidence to the contrary, the trial court could find relevancy based solely on this fact. *See Nation–Wide Check Corp.,* 692 F.2d at 217; *see also* GORELICK ET AL., *supra,* at § 2.4A (Supp. 1998). However, if the spoliating party negligently destroyed evidence, then the nonspoliating party should offer some proof about what the destroyed evidence would show. *See Turner,* 142 F.R.D. at 77. For example, if medical records are negligently destroyed, the nonspoliating party could show what a typical medical record would contain. *Cf. Sweet,* 895 P.2d at 491. Then a court could decide whether the evidence destroyed would have been helpful to the nonspoliating party's case or defense. Importantly, the spoliating party is still free to attempt to show that the negligently destroyed evidence was irrelevant and that no prejudice resulted from its destruction. *See Brewer v. Dowling,* 862

S.W.2d 156 (Tex.App.—Fort Worth 1993, writ denied).

Additionally, courts should consider whether the destroyed evidence was cumulative of other competent evidence that a party can use in place of the destroyed evidence, and whether the destroyed evidence supports key issues in the case. *See Battocchi,* 581 A.2d at 767; *see generally Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994) (noting that in design defect cases, a plaintiff may only be minimally prejudiced by the destruction of the actual product); *Dillon,* 986 F.2d at 267–68 (considering plaintiffs' claims that the nonspoliating party was not prejudiced because there was ample evidence available for the defendant to use in defending against the design defect claim). Obviously, the more evidence there is and the less important the issue involved is, the less prejudice the nonspoliating party will suffer.

### B. SPOLIATION SANCTIONS

#### 1. Authority to Sanction

Trial courts have broad power to police litigants and protect against evidence spoliation. Our rules of civil procedure allow trial courts to sanction parties whenever a party abuses the discovery process. *See* Tex.R. Civ. P. 215(3). Thus, if a party destroys relevant evidence during the discovery process, the trial court has the authority to sanction the spoliating party.

In instances where Rule 215 may not apply—for example, prelitigation destruction of evidence—a trial court has inherent power to remedy spoliation. In *Eichelberger v. Eichelberger,* 582 S.W.2d 395 (Tex.1979), this Court held that trial courts have inherent judicial power to take action that will "aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." In *Kutch v. Del Mar College,* the court of appeals refined this concept by recognizing that the core functions of the judiciary include "hearing evidence, deciding issues of fact raised by the pleadings, [and] deciding questions of law...." *Kutch v. Del Mar College,* 831 S.W.2d 506, 510 (Tex.App.—Corpus Christi 1992, no writ); *see also Greiner v. Jameson,*

865 S.W.2d 493, 498–99 (Tex.App.—Dallas 1993, writ denied). The destruction of potentially relevant evidence clearly inhibits courts' ability to hear evidence and accurately determine the facts. Thus, without the inherent power to protect against evidence destruction, courts would be prevented from hearing relevant evidence and would be unable to ensure the proper administration of justice.[2]

### 2. Sanctions For Spoliation of Evidence

Once a court finds that evidence has been improperly spoliated and that the nonspoliating party was prejudiced by the spoliation, the court should decide what sanction to apply. Trial courts have broad discretion[3] in choosing the appropriate sanction. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). There are a wide variety available. *See* Scott S. Katz & Anne Marie Muscaro, *Spoilage of Evidence—Crimes, Sanctions, Inferences, and Torts,* 29 Tort & Ins. L.J. 51 (1993); Kelly P. Cambre, Comment, *Spoliation of Evidence: Proposed Remedies for the Destruction of Evidence in Louisiana Civil Litigation,* 39 Loy. L.Rev. 601 (1993). Among other courts that have considered this issue, the primary sanctions are dismissal or default judgment against the spoliator and exclusion of evidence or testimony.

Because of the varying degrees of sanctions available and because each case presents a unique set of circumstances, courts should apply sanctions on a case by case basis. *See Schmid,* 13 F.3d at 81; *Welsh,* 844 F.2d at 1247. Important factors for the trial court to weigh include the degree of the spoliator's culpability and the prejudice the nonspoliator suffers. *See, e.g., Schmid,* 13 F.3d at 79; *Welsh,* 844 F.2d at 1246; *see also San Antonio Press, Inc. v. Custom Bilt*

*Mach.,* 852 S.W.2d 64, 67 (Tex.App.—San Antonio 1993, no writ). As with any other type of sanction, the trial court's sanction must be directed against the wrongdoer and properly tailored to remedy the prejudice. *See TransAmerican,* 811 S.W.2d at 917.

The most severe sanction for evidence spoliation is to dismiss the action or render a default judgment. *See TransAmerican,* 811 S.W.2d at 917–18; *Ramirez v. Otis Elevator Co.,* 837 S.W.2d 405, 410–11 (Tex.App.—Dallas 1992, writ denied). In considering this sanction, courts must be sensitive to certain constitutional due process considerations and avoid depriving a party of the right to have its case heard on the merits. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 209–10, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *TransAmerican,* 811 S.W.2d at 917–18. However, courts have found that a dismissal or default judgment is justified when a party destroys evidence with the intent to subvert discovery. *See Computer Assocs. Int'l, Inc.,* 133 F.R.D. at 169; *Wm. T. Thompson Co.,* 593 F.Supp. at 1456. Thus, courts can dismiss an action or render a default judgment when the spoliator's conduct was egregious, the prejudice to the nonspoliating party was great, and imposing a lesser sanction would be ineffective to cure the prejudice. *See TransAmerican,* 811 S.W.2d at 917–18; *Ramirez,* 837 S.W.2d at 410–11; *see also Remington Arms Co. v. Caldwell,* 850 S.W.2d 167, 171 (Tex.1993); *see also National Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 640, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Pressey,* 898 F.2d at 1023–24; *Wm. T. Thompson Co.,* 593 F.Supp. at 1456; *Capellupo,* 126 F.R.D. at 552; *Hirsch,* 628 A.2d at 1127.

---

**2.** Most other jurisdictions also recognize courts' inherent power to sanction parties for the destruction of evidence. *See, e.g., Sacramona,* 106 F.3d at 446 (recognizing that courts have the inherent authority to sanction a party for spoliating evidence to prevent prejudice to the nonspoliating party); *Dillon,* 986 F.2d at 267 (holding that courts have the inherent power to sanction parties for destroying evidence prelitigation that the party knew or should have known was relevant to imminent litigation); *Unigard Sec. Ins.,* 982 F.2d at 368 & n. 2 (noting that courts have

the inherent power to sanction parties who are at fault in destroying evidence prelitigation).

**3.** Some courts have held that when a trial court determines that a party destroyed evidence in bad faith, it is an abuse of discretion not to either sanction the party or submit a spoliation instruction. *See Alexander v. National Farmers Org.,* 687 F.2d 1173, 1205–06 (8th Cir.1989); *Battocchi,* 581 A.2d at 767.

Another effective sanction is excluding evidence or testimony. Courts generally use this sanction when the spoliating party is attempting to admit testimony or evidence adduced from the destroyed evidence. *See, e.g., Sacramona.*, 106 F.3d at 444; *Dillon,* 986 F.2d at 263; *Unigard Sec. Ins. Co.,* 982 F.2d at 363; *Fire Ins. Exch.,* 747 P.2d at 911; *Chapman,* 469 S.E.2d at 783; *Hamann,* 539 N.W.2d 753. In these situations, the nonspoliating party is at a double disadvantage. Not only is the nonspoliating party precluded from using the evidence, but evidence adduced from the destroyed evidence is being used against that party. Understandably, it will be extremely difficult for the nonspoliating party to defend against the spoliating party's allegations without being able to inspect the evidence. Thus, in some instances, it is proper for courts to exclude the spoliating party's evidence.

### C. SPOLIATION PRESUMPTION

In addition to sanctions, Texas courts have broad discretion in instructing juries. *See* TEX.R. CIV. P. 277; *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1975). Thus, when a party improperly destroys evidence, trial courts may submit a spoliation presumption instruction. *See, e.g., Watson v. Brazos Elec. Power Coop., Inc.,* 918 S.W.2d 639 (Tex. App.—Waco 1996, writ denied).[4] Deciding whether to submit this instruction is a legal determination. As stated earlier, the trial court should first find that there was a duty to preserve evidence, the spoliating party breached that duty, and the destruction prejudiced the nonspoliating party.

Depending on the severity of prejudice resulting from the particular evidence destroyed, the trial court can submit one of two types of presumptions. *See Welsh,* 844 F.2d at 1239. The first and more severe presumption is a rebuttable presumption. This is primarily used when the nonspoliating party cannot prove its prima facie case without the destroyed evidence. *See Welsh,* 844 F.2d at 1248; *Sweet,* 895 P.2d at 491; *Valcin,* 507 So.2d at 599. The trial court should begin by

instructing the jury that the spoliating party has either negligently or intentionally destroyed evidence and, therefore, the jury should presume that the destroyed evidence was unfavorable to the spoliating party on the particular fact or issue the destroyed evidence might have supported. Next, the court should instruct the jury that the spoliating party bears the burden to disprove the presumed fact or issue. *See Welsh,* 844 F.2d at 1247; *Sweet,* 895 P.2d at 491–92; *Valcin,* 507 So.2d at 600; *Lane v. Montgomery Elevator Co.,* 225 Ga.App. 523, 484 S.E.2d 249, 251 (1997). This means that when the spoliating party offers evidence rebutting the presumed fact or issue, the presumption does not automatically disappear. It is not overcome until the fact finder believes that the presumed fact has been overcome by whatever degree of persuasion the substantive law of the case requires. *See Sweet,* 895 P.2d at 492 (quoting *Valcin,* 507 So.2d at 600–01).

In shifting the burden of proof to the spoliating party, trial courts are choosing a middle ground that neither "condones the ... spoliation of evidence at the [nonspoliating party's] expense nor imposes an unduly harsh and absolute liability" upon the spoliating party. *Welsh,* 844 F.2d at 1249. Moreover, by shifting the burden of proof, the presumption will support the nonspoliating party's assertions and is some evidence of the particular issue or issues that the destroyed evidence might have supported. The rebuttable presumption will enable the nonspoliating party to survive summary judgment, directed verdict, judgment not withstanding the verdict, and factual and legal sufficiency review on appeal. *See Lane,* 484 S.E.2d at 251.

The second type of presumption is less severe. It is merely an adverse presumption that the evidence would have been unfavorable to the spoliating party. *See H.E. Butt Grocery Co. v. Bruner,* 530 S.W.2d 340, 344 (Tex.Civ.App.—Waco 1975, writ dism'd by agr.); *see also, Vodusek,* 71 F.3d at 155; *DeLaughter,* 601 So.2d at 821–22; *Hirsch,* 628 A.2d at 1126. The presumption itself has

---

**4.** Notably, the court of appeals in *Watson* held that the trial court erred in refusing to submit a spoliation instruction when the nonspoliating

party had properly raised the issue. *See Watson,* 918 S.W.2d at 643.

probative value and may be sufficient to support the nonspoliating party's assertions. *See Bruner,* 530 S.W.2d at 344. However, it does not relieve the nonspoliating party of the burden to prove each element of its case. *See DeLaughter,* 601 So.2d at 822. Therefore, it is simply another factor used by the factfinder in weighing the evidence.

## III. CONCLUSION

Without creating a new cause of action, there are still a variety of remedies available to punish spoliators, deter future spoliators, and protect nonspoliators prejudiced by evidence destruction. Thus, while the Court declines to recognize a cause of action, Orte-ga has other available remedies. As I have explained, Ortega can move for sanctions or request a spoliation presumption in the underlying malpractice action. If he shows that Dr. Trevio had a duty to preserve evidence, Dr. Trevio violated that duty, and the destruction prejudiced Ortega's ability to bring suit, the trial court can remedy the spoliation.