# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0657
═══════════

ASHISH PATEL, ANVERALI SATANI, NAZIRA MOMIN, MINAZ CHAMADIA,
AND VIJAY LAKSHMI YOGI, PETITIONERS/CROSS-RESPONDENTS,

v.

TEXAS DEPARTMENT OF LICENSING AND REGULATION, ET AL.,
RESPONDENTS/CROSS-PETITIONERS

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════════════════

JUSTICE GUZMAN, dissenting.

This Court has long maintained that it does not legislate from the bench. Today, it does just that. Worse yet, it does so in the context of revivifying substantive due process, one of the most volatile doctrines in constitutional history.[1] Like the accompanying dissent, I maintain that while the regulation seems excessive as a matter of policy, it is nevertheless not unconstitutional as a matter of law. Further, I harbor doubts that the test propounded by the Court to evaluate issues of this nature will provide any guidance in future cases. Thus, I write separately to underscore my conception of the judicial role. Because I unequivocally believe that policymaking is a prerogative properly and constitutionally vested in the Legislature, I respectfully dissent.

---

[1] *See, e.g.*, Slip Op. at 22 (Hecht, C.J., dissenting) ("Judicial usurpation of authority over the State's policies may provide protection for the economic liberties on which the concurrence waxes eloquent, but it also gives rise to such decisions as *Roe v. Wade*.").

The Court's opinion ably sets out the facts, and describes the somewhat byzantine web of regulations that apply to cosmetologists, a class that includes eyebrow threaders like the petitioners ("Threaders"). To legally practice cosmetology in Texas, a license is required. TEX. OCC. CODE §§ 1602.251(a), .257. A general operator license requires training a minimum of 1,500 hours, whereas an esthetician specialty license requires a minimum of 750 hours.[2] *Id*. §§ 1602.254, .257; *see also* 16 TEX. ADMIN. CODE § 83.20(a), (b). Individuals engaged in the business of eyebrow threading are required to obtain at least an esthetician specialty license. *See* TEX. OCC. CODE §§ 1602.002(a)(9), .257(a); *see also* 16 TEX. ADMIN. CODE § 83.10(11).

The record shows that of the 750 hours required for an esthetician license, 40 hours are devoted to sanitation. Sanitation and hygiene issues are also intermittently addressed elsewhere during training, albeit in the context of instruction on other subjects. The fact that health and safety instruction comprises at least part of the required instruction is no small matter, given that the Threaders' own expert observed that improper threading procedures can contribute to the spread of highly contagious bacterial and viral infections, including flat warts, skin-colored lesions known as mulluscum contagiosum, pink eye, ringworm, impetigo, staphylococcus aureus, and other similarly unpleasant maladies.

The central dispute concerns the training requirements, specifically the amount of time they necessarily require. The Threaders contend that as many as 710 of the 750 training hours for an esthetician license are unnecessary, given that they concern procedures unrelated to threading. The

---

[2] For the operator license, up to 500 hours of public vocational school may be credited toward the 1,500 hours. TEX. OCC. CODE § 1602.254(b)(3)(B).

State disputes that math, but even its estimate concedes that as many as 320 of the curriculum hours are unrelated to health and safety issues engendered by eyebrow threading. In the Threaders' view, the licensure courses require too much time and feature too much irrelevant material, and by mandating them for eyebrow threading, the State of Texas violates the guarantee of the Texas Constitution that "[n]o citizen of this State shall be deprived of . . . liberty . . . except by the due course of the law of the land." TEX. CONST. art. I, § 19.

The Court propounds a novel test in resolving this core dispute. The second prong of this test holds that an as-applied challenge to an economic regulation statute under section 19's substantive-due-course-of-law requirement will fail to overcome the presumption that the statute is constitutional, unless the challenging party demonstrates that the statute's "actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest." Slip Op. at 27-28. Relying on this element of the test, the Court estimates that approximately 42 percent of the minimum required training hours are "arguably" not relevant to the actual work performed by eyebrow threaders. *Id.* at 32. While this is not "determinative" of the constitutional question, the Court says that "the percentage must also be considered along with other factors, such as the quantitative aspect of the hours represented by that percentage and the costs associated with them." *Id.*

I have significant doubts that this standard is workable in practice.[3] As the Court itself concedes, "[t]he dividing line is not bright between the number of required but irrelevant hours that

---

[3] Whether a test is "workable" is something this Court has considered before. *See, e.g.*, *Trevino v. Ortega*, 969 S.W.2d 950, 956 (Tex. 1998) ("The *National Tank* test is workable in the spoliation context; yet, it must be modified somewhat.").

would yield a harsh, but constitutionally acceptable, requirement and the number that would not." *Id.* at 33. But this concession seems to prove the folly of the enterprise in the first place. Lacking a standard that can be implemented consistently, how can a court be expected to make determinations of this nature in future cases (which, I hasten to add, will surely follow in the wake of this opinion)? I recognize that in many areas of the law, bright-line tests are simply not appropriate nor attainable.[4] But here the Court, with only the information gleaned from the limited record before us, is marching into a fraught area—substantive due process—armed only with an imprecise standard.

The Court agrees with the Threaders' characterization of the regulation as arbitrary, but alas, that same adjective could be applied to the line-drawing necessarily involved here and in future cases. Is 750 hours too much to require for threading? From the Threaders' perspective, perhaps. But from the vantage of someone injured by these procedures, perhaps not. Some threading techniques reportedly rely on placing one end of the string in the threader's mouth, which would seem to invite a host of bacterial infections (superficial folliculitis, for instance). Different skin sensitivities could be placed at different risks by these procedures. The crucial point is that these considerations, and their relation to training programs, are quintessential legislative inquiries. Thus, I agree with the Court when it admits: "Differentiating between types of cosmetology practices is the prerogative of the Legislature and regulatory agencies to which the Legislature properly delegates

---

[4] *See, e.g.*, *Ohio v. Robinette*, 519 U.S. 33, 34 (1996) (noting that "the Court has consistently eschewed bright-line rules" in the Fourth Amendment context, "instead emphasizing the fact-specific nature of the reasonableness inquiry").

4

authority," and likewise with the statement that "it is not for courts to second-guess their decisions as to the necessity for and the extent of training that should be required for different types of commercial service providers." *Id.* at 31. In my view, the plain truth of these statements suggests a contrary approach.

This case involves first principles, and timeless precepts bear repeating. By design, our system of government rests on checks and balances and separation of powers. The genius of the Founders lay in their prescience. Frankly acknowledging human frailty, they designed a system of government that apportions power among the three branches, allowing a proper balance of interests and ambitions. In order for this equipoise to persist, however, denizens of government's separate branches must properly conceive of their relative roles. For the judiciary, as with the other branches, this means recognizing the limits on its own authority. This is no easy matter, given that human nature tilts to the arrogation of power; as Justice Antonin Scalia once waggishly noted, this enduring trait is why Lord Acton never uttered "'[p]ower tends to purify.'" *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 981 (1992) (Scalia, J., concurring in part and dissenting in part).

Were I a member of the Legislature, there is little question that I would look to reduce the burden placed on eyebrow threaders, as I agree with the accompanying dissent's sense that "on this record, threading regulation is obviously too much."[5] Slip. Op. at 11 (Hecht, C.J., dissenting). But I am not a legislator; I am a judge. Accordingly, I am duty-bound to apply the law regardless of my

---

[5] Assuming, of course, that the record before this Court is complete. As the accompanying dissent wisely observes, "nothing of what prompted the regulation is before us. We have conducted no investigations and held no hearings. As in any case, we know what the parties have told us, and nothing more." Slip Op. at 11 (Hecht, C.J., dissenting).

policy preferences. The difficult line-drawing problems involved in this case are best resolved by the Legislature, which by dint of its experience and competence is better equipped to decide these questions than this tribunal. The question is not whether these regulations are prudent, but whether they violate the Texas Constitution's due-course-of-law provision. That is a different matter entirely. Because I disagree with the Court on this fundamental query, I respectfully dissent.

                                                 _____

                                                 Eva M. Guzman
                                                 Justice

**OPINION DELIVERED:** June 26, 2015