**AFFIRMED and Opinion Filed January 24, 2022**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00432-CV**

**ANWAR KAZI, ZAMEER SACHEDINA, ROHIT SHARMA, AND WISEMAN INNOVATIONS, LLC., Appellants**

**V.**

**MOHAMMAD SOHAIL, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-09713**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Garcia

This is an accelerated interlocutory appeal from a temporary injunction enjoining appellants from altering or silencing the testimony of witnesses and potential witnesses in disputes involving Mohammad Sohail. In a single issue with several subsidiary issues, appellants argue that the trial court abused its discretion by entering the complained-of order. We disagree and affirm the trial court's order.

### I. BACKGROUND

Sohail is one of the founders of and former CEO and director of Wiseman Innovations, LLC ("Wiseman"), a Texas company. Anwar Kazi is a member and

director of Wiseman, and a managing member and CEO of a related entity, Sybrid Health, LLC. Zameer Sachedina and Rohit Sharma are Wiseman officers and directors. Sohail, Kazi, Sachedina, and Sharma all reside in Texas.

In 2021, Sohail sued Wiseman, Kazi, Sachedina, and Sharma (collectively, "appellants") for fraud, fraudulent inducement, breach of contract, breach of fiduciary duty, and abuse of process, requesting damages, declaratory relief, recission, and specific performance. The lawsuit is premised on allegations that appellants threatened Sohail and his family and lied to him to induce his resignation and execution of a consulting agreement.

After the lawsuit was filed, appellants filed a criminal complaint against Sohail and his brother in Pakistan and had Sohail's brother arrested. Then, appellants attempted to have two individuals, Sajid Fiaz and Waleed Khaled, (both of whom reside in Pakistan) give false testimony against Sohail. Sohail sought a temporary restraining order and a temporary injunction seeking an end to witness intimidation. The TRO application was supported by statements from Fiaz and Khaled describing the threats to bring criminal charges against them, harm their family members, and in Khaled's case to "make an example out of him."

The trial court entered a TRO enjoining appellant from harassing, intimidating, or influencing any witness or potential witness. In that order, the court found that the TRO was necessary to preserve the status quo and avoid imminent and irreparable harm.

The court subsequently conducted a temporary injunction hearing. Fiaz testified about threats made by appellants and their agents in Pakistan in an effort to pressure him to lie and fabricate evidence against Sohail. Fiaz refused to "create false evidence" against Sohail and resigned from Wiseman. Fiaz was terrified, was so distressed that his blood pressure spiked, and he was hospitalized for two days. Sharma and others from Wiseman continued to call Fiaz and said that helping them was necessary to protect Fiaz's family. The appellants told Fiaz about how they created a criminal case against Khalid and "put him in a situation where [he] could not find anyone to hire him in Islamabad and that he would soon "be on a [travel restriction list]" and unable to travel anymore. The court's summary of Fiaz's testimony is supported by the record:

> Fiaz, was ordered to confirm and testify that he had helped Sohail violate company protocols, steal confidential information, and gain access to emails and data belonging to Sybrid Health, LLC, among other things. Fiaz refused. When he did, Wiseman's agents in Pakistan and Mr. Sharma from the United States, threatened Mr. Fiaz and his family. He was told that if he did not comply and say what they wanted him to say about Sohail's theft and access to emails, he too would be made an example of like Waleed Khalid before him, and that his safety was in danger and that of his family because "Wiseman is very powerful" and "Sohail would not be able to protect [him]." Instead, they promised they would "protect him" if he simply "told the truth" — which meant making allegations that Mr. Fiaz believed were false. Mr. Fiaz had to be taken to the hospital emergency room to quell his panic over these threats. He was then threatened again that he would go to "Jenna" which means heaven. He resigned via letter to the Board of Wiseman, citing these threats and his unwillingness to lie in order to support the false accusations against Mr. Sohail. He asked that he only be contacted through counsel, and not directly. But

Defendants continued to contact him directly and withheld compensation due him.

The court found Fiaz's testimony "credible enough to raise a serious concern that the judicial process needs to be protected from this type of interference," and "an assault on witnesses whose testimony stands to be compromised or spoliated, which the Court deems a grave assault on both the integrity of the judicial process as well as on its jurisdiction over the matters before it." Finding that the requested injunctive relief was available as an equitable remedy through the court's inherent power and was necessary "to protect the integrity of the judicial process and [the] court's jurisdiction," the trial court entered the temporary injunction order that is the subject of this appeal.

## II. ANALYSIS

Appellants argue that the trial court abused its discretion by entering the temporary injunction because: (i) it fails to adequately specify the individuals appellants are enjoined from harassing or intimidating, (ii) it is overly broad because it enjoins lawful activity, including legitimate business communications, and is therefore an unconstitutional prior restraint on speech, (iii) appellee failed to show a probable right to relief and irreparable harm, (iv) the order improperly includes a non-party who was not served with notice of the hearing, and (v) the injunction violates principles of international comity by hindering a criminal investigation in Pakistan.

## A. Standard of Review and Applicable Law

Whether to grant a permanent or temporary injunction is ordinarily within the sound discretion of the trial court and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Computek Computer & Office Supplies Inc. v. Walton*, 156 S.W.3d 217, 220 (Tex. App.—Dallas 2005, no pet.). Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities. *Hitt v. Mabry*, 687 S.W.2d 791, 792 (Tex. App.—San Antonio 1985, no writ). "We limit the scope of our review to the validity of the order, without reviewing or deciding the underlying merits, and will not disturb the order unless it is so arbitrary that it exceeds the bounds of reasonable discretion." *Henry v. Cox*, 520 S.W.3d 28, 33–34 (Tex. 2017) (internal quotes and footnotes omitted).

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.). To obtain a temporary injunction, an applicant must plead and prove three elements: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). An injury is irreparable if the injured

party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *TMC Worldwide*, 178 S.W.3d at 36.

## B. Is the Injunction Impermissibly Vague in Violation of Rule 683's Specificity Requirements?

Appellants argue that the temporary injunction fails to meet Rule 683's specificity requirements because it "imposes sweeping restrictions on communications with persons not named or even adequately described," and is therefore impermissibly vague. In essence, appellants complain that the injunction fails to identify the witnesses and prospective witnesses they are enjoined from harassing.

Rule 683 of the Texas Rules of Civil Procedure set forth various requirements of a temporary injunction. The rule provides, in part, as follows:

> Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

TEX. R. CIV. P. 683. Accordingly, every order granting an injunction must be specific in its terms and describe the acts sought to be restrained in reasonable detail. *See* TEX. R. CIV. P. 683; *Lagos v. Plano Economic Dev. Bd., Inc.*, 378 S.W.3d 647, 650 (Tex. App.—Dallas 2012, no pet.). The purpose of rule 683's specificity requirement is to ensure that parties are adequately informed of the acts

they are enjoined from doing and the reasons for the injunction. *Miller v. Talley Dunn Gallery, LLC*, No. 05-15-00444-CV, 2016 WL 836775, at \*5 (Tex. App.—Dallas Mar. 3, 2016, no pet.) (mem. op); *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.). A trial court abuses its discretion by issuing a temporary injunction order that does not comply with the requirements of rule 683. *Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.).

At first blush and viewed in isolation, enjoining conduct relating to unnamed "witnesses" and "potential witnesses" may appear somewhat vague. But when the order's language is read in context, particularly regarding the prohibited behavior, the meaning is specific and clear. Do not engage in unlawful acts. Specifically, the order enjoins appellants, their principles, agents, employees, and representatives, and those acting in concert with them from "**engaging in conduct to alter or silence the testimony of a witness or prospective witness** in any dispute involving . . . Sohail" including, but not limited to:

- trying to bribe a witness prospective witness with money or gifts to influence his/her testimony.

- persuading a witness/ prospective witness to testify falsely and/or withhold testimony, information or documents.

- persuading a witness/prospective witness to elude legal process summoning the witness to testify or supply evidence.

- persuading the witness/prospective witness to be "absent "from an official proceeding to which the witness has been legally summoned.

–7–

- threatening to take away or take custody of the witnesses′ or prospective witnesses' children.

- threatening to harm the witness' /or prospective witness' family if they testify.

- sending threatening or intimidating message(s) to a witness/prospective witness in an effort to prevent or influence testimony.

- threatening physical force to keep a witness/prospective witness from testifying.

- blackmailing a witness/prospective witness in an attempt to prevent or influence their testimony.

- using social media to intimidate or frighten a witness/prospective witness.

(Emphasis added). This prohibited conduct pertains to unlawful acts.[1] Hopefully, appellants do not mean to suggest that if the order named witnesses and potential witnesses, they would otherwise be free to intimidate, coerce, blackmail, or otherwise harm individuals who are not named. No court could condone such untenable conduct, and we are disinclined to condemn an order's specificity so that appellants may identify persons they are permitted to harass.

Appellants rely on *Computek Computer & Office Supplies v. Waldren*, 156 S.W.3d 217, 223 (Tex. App.—Dallas 2005, no pet.), *Retail Svs. WIS Corp. v. Crossmark, Inc.*, No. 05-20-00937-CV, 2021 WL 1747033, at \*12–14 (Tex. App.— Dallas May 4, 2021, pet. denied) (mem. op.), and *In re Krueger*, No. 03-

---

[1] Appellants concede that "most" of these activities are illegal but claim that enjoining them from engaging in illegal activity harms their business reputation.

12-00838-CV, 2013 WL 2157765, at *9 (Tex. App.—Austin May 16, 2013, no pet.) (mem. op.) to argue that witnesses and potential witnesses must be named. As a sister court has recognized, the issue of how an injunction order prohibiting a class of persons from contacting or dealing with another class of persons should identify the persons who fall within this class frequently arises in cases enforcing noncompete clauses. *See Hernandez v. Combined Insurance Co. of America*, No. 02-20-00225-CV, 2021 WL 520456, at *22 (Tex. App.—Fort Worth Feb. 11, 2021, pet. denied) (mem. op.). But these types of cases, including those cited by appellants, do not inform our analysis here.

In *Computek*, OEM Supplies (OEM) and Michael Williams (Computek's owner), were opposing parties in litigation involving Computek's alleged use of trade secrets to form a competing company in violation of a covenant not to compete. *Id*. at 219–20. Computek had been permanently enjoined "from doing business, or authorizing anyone else to do business, with any OEM client not listed on Attachment A or that was a new account set up while Williams worked for OEM." *Id.* at 221. Although Attachment A listed some clients whom Computek could contact, the injunction did not name or otherwise identify the clients whom Computek could not contact. *Id.* Computek contended that due to this lack of specificity, it could not know whether contacting certain clients violated the injunction. *Id*. at 221–22. We agreed, explaining that:

[T]hese paragraphs [of the injunction] enjoin Computek from taking specific actions involving specific OEM clients who are not identified or listed in the permanent injunction, and from using or disclosing information and files that are not specifically identified in the permanent injunction. Because these OEM clients are not specifically named, we agree with Computek that it must ask every non-ABBA contact it makes whether it was an OEM client during the relevant times, and that question may be construed as "canvassing" or "soliciting," and thus a violation of the permanent injunction. We agree with Computek that the permanent injunction lacks specificity in this regard.

*Id*. at 222.

Similarly, in *Retail Services*, we concluded that several aspects of the injunction lacked specificity. *Retail Svs*., 2021 WL 1747033 at *12-14. For example, the order defined "covered clients customers" as "those persons or entities that Crossmark provided services to and that the Former Employees either had contact with, or received proprietary information about . . . ." *Id.* at *13. We concluded that the meaning of "had contact with" was unclear and the definition did not address how Retail Services would know whom the supervised employees "had contact with." *Id.* We also concluded that a provision enjoining Retail Services from recruiting "any persons formerly or currently employed by or associated with Crossmark" lack specificity because "associated with" was undefined. *Id.*

The *Krueger* court also found that the injunction lacked specificity because it did not inform Krueger who he was allowed to contact and who he was enjoined from contacting. *Krueger*, 2013 Wl 2157765, at *9. As the court observed, "[T]he

–10–

obvious purpose of [Rule 683] is to adequately inform a party of what he is enjoined from doing and the reason why he is so enjoined." *Id.* at \*5, (citing *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.)

There are several critical distinctions between the cited cases and the present case. Indeed, as the trial court recognized, the circumstances here are disturbing and unique and constitute a serious affront to the integrity of the judicial process. First, the foregoing cases involved legal activity whereas the injunction here enjoins appellants from engaging in activities the law forbids. *See* TEX. PENAL CODE ANN. §36.05(e-3) (criminalizing witness intimidation); TEX. PENAL CODE ANN. § 37.09 (crime of fabricating evidence); TEX. PENAL CODE ANN. § 37.02(a)(1) (perjury); *see also Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 24 (Tex. 2014) (discussing spoliation of evidence). In the cited cases, the courts focused on the specificity of language enjoining legitimate business activity. It is axiomatic that the purpose of Rule 683's specificity requirement is to make clear what parties can and cannot do in the context of what the law otherwise allows. Enjoining illegal activity involving witnesses and potential witnesses does not run afoul of this requirement.

Moreover, the injunctions at issue in the cases appellants cite were not deemed insufficiently specific merely because the order described individuals by category or role rather than name. Instead, the orders were not sufficiently specific

–11–

because the meaning and definitions of the categories were unclear. *See Computek*, 156 S.W.3d at 221–222; *Retail Svs*., 2021 WL 1747033, at \*12–14. There is no such absence of clarity here.

Nothing in Rule 683 mandates that individuals be specifically named. In fact, courts have affirmed injunctions identifying only categories or classes of persons to whom the order applies. *See In re S.V.*, No. 05-18-00037-CV, 2019 WL 516730, at \*9 (Tex. App.—Dallas Feb. 11, 2019, no pet.) (mem. op.) (affirming permanent injunction enjoying father from contacting children's "teachers" or "coaches" who were not named).

The injunction spells out the details of compliance in clear, specific, and unambiguous terms so that appellant can readily ascertain the duties and obligations imposed on them. *See Drew v Unauthorized Practice of Law Comm.*, 970 S.W.2d 152, 156 (Tex. App.—Austin 1998, pet. denied). Accordingly, we cannot conclude that the temporary injunction fails to comply with Rule 683's specificity requirements.

## C.    Is the Injunction Overly Broad?

Appellants also complain that the injunction is overly broad because it imposes a constitutionally impermissible prior restraint on communications undertaken for legitimate business purposes. We disagree.

An injunction must be as definite, clear, and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956). But it must be in sufficiently broad terms to prevent repetition of the evil sought to be stopped. *Id.* An injunction "must not be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *Hitt v. Mabry*, 687 S.W.2d 791, 795 (Tex. App.—San Antonio 1985, no writ).

Regarding the illegal conduct enjoined, appellants have not identified, nor are we aware of any authority recognizing a right, constitutional or otherwise, to engage in illegal activity. Nor can such activity be reasonably described as a legitimate business purpose.

The order also prohibits communicating directly with witnesses and potential witnesses about any dispute with Sohail without counsel present. Appellants do not specifically complain that the "any dispute" verbiage is vague. Rather, they challenge only the reference to witnesses and potential witnesses, insisting that these categories of persons could potentially include all employees of Wiseman's Pakistani affiliate as well as non-employee business associates who may have had contact with Sohail. The record does not reflect whether the Pakistani affiliate has many or just a few employees, so it is impossible to ascertain the significance of this application. Regardless, the order does not prohibit all communication; it relates only to communication about Sohail disputes when that communication is with someone who is or may be a witness. Moreover, it does not forbid such communication; it requires that counsel be present when such

communication occurs. The order does not, as appellants suggest, include every non-employee who merely had contact with Sohail. Rather, such communications fall within the scope of the order to the extent that they involve communication about Sohail disputes. Further, as active participants in the litigation, appellants cannot reasonably claim they are not well-positioned to know who is or may be a witness in these disputes.

The trial court found that the evidence of harassing, intimidating, and threatening the safety of witnesses and potential witnesses and their families was credible. Requiring counsel's presence for future witness communications is not arbitrary or unreasonable, and in fact, can reasonably be viewed as designed to hinder future "calculated [efforts] to circumvent the law." *San Antonio Bar Ass'n,* 291 S.W.2d at 702. Given the gravity of the situation and the evidence demonstrating the necessity of deterring future misconduct, the breadth of the order was required to prevent repetition of the evil sought to be stopped, *See id.,* but is not so broad as to prevent appellants' lawful exercise of legitimate rights.

**D. Probable right to Relief/Eminent Harm/Adequate Remedies**

Appellants argue that there was insufficient evidence to establish a probable right to recovery, or a probable, irreparable, and imminent injury. They further argue that injunctive relief was not appropriate because Sohail has adequate legal remedies. These arguments are not persuasive.

## 1. Injury

We begin with probable, irreparable, and imminent injury. As the trial court noted, the request for injunctive relief was atypical in that it was not a request to preserve the subject matter of the litigation, but rather, a request to protect the integrity of the judicial process itself. Based on the evidence, the trial court found that the requested relief was available through the court's inherent power to protect the integrity of the judicial process and the court's jurisdiction.

There is no question that the court has such inherent power. As this court has explained:

> A court does not derive its inherent judicial power from legislative grant or specific constitutional provision but from the very fact that the state constitution has created and charged the court with certain duties and responsibilities. The inherent powers of a court are those that it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity.

*Greiner v. Jameson*, 865 S.W.2d 493, 498–99 (Tex. App.—Dallas 1993, writ denied); *see also Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex. 1979). Accordingly, trial courts may exercise their inherent power to deter, alleviate, and counteract any significant interference with their core functions. *Davis v. Rupe*, 307 S.W.3d 528, 531 (Tex. App.—Dallas 2010, no pet.).

The court found that intimidating witnesses and suborning perjury is a species of spoliation because it is an attempt to destroy evidence. We agree. The destruction of potentially relevant evidence "clearly inhibits courts' ability to hear

–15–

evidence and accurately determine facts," and absent the inherent power to protect against such destruction, courts "would be unable to ensure the proper administration of justice." *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex. 1998). Moreover, "there is no one remedy for every incidence of spoliation; the trial court must respond appropriately based upon the facts of each individual case." *Id.* at 953. In instances where Rule 215 sanctions may not apply, courts have inherent power to take action that will "aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Id.* at 958, (Baker, J. concurring).

Here, the court found there was credible evidence of contumacious conduct undermining the integrity of the judicial process and the court's jurisdiction. It is difficult to imagine more express examples of an attempt to subvert the integrity of the judicial process than witness intimidation and efforts to suborn perjury. "Coercing or seeking to obtain or manufacture false testimony strikes at the heart of the judicial system. Lying cannot be condoned in any formal proceeding . . . Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the facts." *Young v. Office if the United States Senate Sergeant at Arms*, 217 F.R.D. 61, 71 (D.D.C. 2003). The trial court correctly concluded that such calculating attempts to strip the judicial process of the very fiber that makes it function properly constitutes irreparable harm, not only to Sohail, but to the entire process.

## 2. Right to relief

Next, we examine whether Sohail established a probable right to relief. Appellants argue that Sohail cannot establish a probable right to recovery because the equitable relief does not follow from any of his causes of action. *See Abbott v. Anti-Defamation League Austin, Sw. & Texoma Regions,* 610 S.W.3d 911, 917 (Tex. 2020) (plaintiff must demonstrate claims will probably succeed on merits).

Citing *All. Royalties, LLC v. Boothe*, 313 S.W.3d 493, 497 (Tex. App.—Dallas 2010, no pet.), appellants argue that there must be some connection between the claims alleged and the conduct sought to be enjoined. We agree with this general proposition but note that *Boothe* is unlike this case. In *Boothe*, our court concluded that the court abused its discretion by enjoining the termination of a contract with a third-party in an interpleader action because the contract was not in any way related to the pleaded claims. In this case, however, Sohail asserted claims for fraud, fraudulent inducement, breach of contract, breach of fiduciary duty, corporate waste, and abuse of process arising out of appellants alleged scheme to cheat him out of his job, investment, and role at the company and induce him to sign a consulting agreement. The trial court found that plaintiff stated a cause of action, established a probability of prevailing on the merits of at least one of his underlying claims and that Sohail proffered evidence that he was forced to resign under duress. This forced resignation goes to the heart of Sohail's claims.

We review the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor. *See Inst. Securities v. Hood*, 390 S.W.3d 680, 682 (Tex. App.—Dallas 2012, no pet.). The trial court has broad discretion in determining whether the pleadings and evidence support a temporary injunction. *Intercontinental Terminals Co., LLC v. Vopak N. Am. Inc.*, 354 S.W.3d 887, 895–96 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The integrity of the legal process is necessary to properly dispose of both parties' claims and defenses. As the injunction serves to protect that process, there was no abuse of that discretion here.

### 3. Adequate remedy at law

We next consider whether Sohail has an adequate remedy at law. "The general rule at equity is that before injunctive relief can be obtained, it must appear that there does not exist an adequate remedy at law." *Butnaru*, 84 S.W.3d at 210. "The party requesting the injunction has the burden to establish that there is no adequate remedy at law for damages." *Reach Grp., L.L.C. v. Angelina Grp.,* 173 S.W.3d 834, 838 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.) "An injunction will not issue if damages are sufficient to compensate the plaintiff for any wrong committed by the defendant and if the damages are subject

–18–

to measurement by an ascertainable pecuniary standard." *Tom James Co. v. Mendrop*, 819 S.W.2d 251, 253 (Tex. App.—Fort Worth 1991, no writ).

Appellants do not identify any damage remedies that might be available for witness tampering and disruption of the judicial process. They nonetheless insist that there are adequate legal remedies to address any future misconduct in the form of sanctions or an order of contempt. This argument presupposes that such conduct would be discoverable and capable of being proved. *See e.g., Hogg v. Lynch, Chappell, & Alsup, P.C.*, 553 S.W.3d 55, 68 (Tex. App.—El Paso 2018, no pet.) (party cannot be sanctioned for failing to produce evidence if there is no proof that it existed). It also ignores that the court found witness intimidation has already occurred, and that judicial action was necessary to prevent subsequent occurrences. It makes little sense to require further misconduct before a court is permitted take remedial steps to safeguard the integrity of the process, particularly since the purpose of injunctive relief is to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru*, 84 S.W.3d at 204.

The purpose of spoliation sanctions is to "impose an appropriate remedy so that the parties are restored to a rough approximation of what their positions would have been were the evidence available." *Brookshire Bros.*, 438 S.W.3d at 18. Appellants offer no explanation as to how Sohail might be restored to his former position if witnesses have altered their testimony or have been so intimidated that they do not testify at all. Under the circumstances present here, the trial court did

not abuse its discretion in concluding that there was no adequate legal remedy to address any recurring bad behavior and the resulting distortion of the judicial process.

## E.  Enjoining the Nonparty Entity

Appellants also argue that the temporary injunction is void as to non-party Sybrid because there is no evidence that it had notice of the hearing or the temporary restraining order or that it was "in active concert or participation" with the noticed parties.

Rule 683 identifies specific categories of persons, according to their relationship to the named defendants, against whom the temporary injunction may be enforced. These include the "officers, agents, servants, employees, and attorneys" of the named defendants. TEX. R. CIV. P.  683. Rule 683 also contains a general category of persons who can be brought within the temporary injunction's enforcement: "those persons in active concert or participation with them [the named defendants] who receive **actual notice of the order** by personal service or otherwise." *Id.* (Emphasis added).

We reject appellants' argument concerning Sybrid's notice of the hearing. The rule requires actual notice of the injunction order itself, not the hearing. *See id.* Similarly, nothing in the rule requires that Sybrid have notice of the TRO, a prior order in which it was not named; the notice requirement pertains to the temporary injunction order enjoining Sybrid.

–20–

We also reject appellant's contention that there is no evidence that Sybrid acts in concert with Wiseman. The record reflects that Wiseman was spun off from Sybrid in 2017, and Sybrid is one of Wiseman's members. Sybrid and Wiseman are both controlled by the same member majority, and Kazi is Sybrid's CEO. One of Fiaz's sworn statements said he had been informed that Wiseman's executives planned to take action against him through Sybrid or its affiliates in Pakistan. This is sufficient to meet the "active concert or participation with" aspect of the rule. *See e.g., Hsin-Chi-Su v. Vantage Drilling Co*., 474 S.W.3d 284, 296 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (corporation acting in concert with named party who was corporation's sole director, shareholder, and officer); *Huynh v. Blanchard,* No. 12-20-00198-CV, 2021 WL 3265549, at *9 (Tex. App.—Tyler July 30, 2021, pet. filed) (mem. op.) (record demonstrated that appellants were either officers, agents, servants, employees, or persons in active concert with parties).

## F.    International Comity

Appellants further argue that the order violates principles of international comity because it inhibits Pakistani authorities from conducting an ongoing investigation. Appellants' argument is misplaced.

As the Texas Supreme Court has explained:

'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to

the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986). Appellants offer no explanation as to how the prohibition against bribing, harming, and intimidating witnesses and potential witnesses involved a Texas judicial proceeding interferes with official legislative, judicial, or executive acts in Pakistan or impedes a criminal investigation.[2] Contrary to appellants' suggestion, the Texas lawsuit does not concern a foreign nation, but rather involves Texas parties, including a Texas company, and some witnesses who reside abroad. Moreover, while we do not underestimate the need for courts' actions to advance the rule of law among nations, the integrity of the judicial process in this country is our foremost concern. The trial court's order here expressed concern for and was specifically tailored to maintain the integrity of that process in this lawsuit.

---

[2] In addition, while appellants do not suggest that any investigating Pakistani officials are witnesses or potential witnesses, to the extent that they may be because the investigation involves communication about appellants' disputes with Sohail, appellants have not explained how counsel's presence would in any way impede that investigation or process.

## III. CONCLUSION

Having resolved appellants' issue and subsidiary arguments against them, we affirm the trial court's order.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210432F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANWAR KAZI, ZAMEER
SACHEDINA, ROHIT SHARMA,
AND WISEMAN INNOVATIONS,
LLC., Appellants

No. 05-21-00432-CV  V.

MOHAMMAD SOHAIL, Appellee

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-09713.
Opinion delivered by Justice Garcia.
Justices Myers and Molberg
participating.

In accordance with this Court's opinion of this date, the trial court's order is
**AFFIRMED**.

It is **ORDERED** that appellee MOHAMMAD SOHAIL recover his costs of
this appeal from appellant ANWAR KAZI, ZAMEER SACHEDINA, ROHIT
SHARMA, AND WISEMAN INNOVATIONS, LLC..

Judgment entered January 24, 2022.